# GAMBLE-SKOGMO, INC., AND ANOTHER v. ST. PAUL MERCURY INDEMNITY COMPANY AND ANOTHER.[1]

April 23, 1954.

No. 36,049.

---

[1]Reported in 64 N. W. (2d) 380.

*Rosengren & Rufer* and *Harry H. Peterson,* for appellant.
*Field, Arvesen & Donoho,* for respondents-plaintiffs.
*Garrity & Garrity,* for respondent-defendant.

CHRISTIANSON, JUSTICE.

This appeal presents for determination a novel and difficult question of insurance coverage. On July 14, 1948, Oscar Lyngstad was accidentally injured during the process of assembling a farm implement known as a Cockshutt swather preparatory to its being unloaded from the platform of a truck on which it was resting. Lyngstad shortly thereafter commenced an action to recover damages for his injuries. A jury trial was had in November 1948 which resulted in a verdict against Gamble-Skogmo, Inc. (hereafter called Gamble-Skogmo). Gamble-Skogmo was represented and defended in the action by American Automobile Insurance Company (hereafter called American). However, because of various circumstances surrounding the accident, which will be described in detail later, no less than three separate insurance companies, including American, had policies outstanding which afforded possible insurance coverage to Gamble-Skogmo for liability resulting from the injuries to Lyngstad. In order to relieve Gamble-Skogmo of the embarrassment of an unsatisfied judgment and to provide an efficient means to litigate the merits of the issue of insurance coverage, American paid the judgment entered in favor of Lyngstad and received an assignment from Gamble-Skogmo of all of Gamble-Skogmo's rights and claims

against both St. Paul Mercury Indemnity Company (hereafter called Mercury) and Hartford Accident & Indemnity Company (hereafter called Hartford) arising under their respective policies of insurance.[2] In the assignment it was expressly understood that in paying said judgment American did not waive or relinquish in any way its own claim that its comprehensive automobile liability policy in which Gamble-Skogmo is the named insured afforded no coverage for the Lyngstad judgment. Pursuant to this assignment, American brought an action in the name of itself and Gamble-Skogmo against both Mercury and Hartford in order to recover the amount it paid to satisfy the Lyngstad judgment and in addition the expenses it incurred in defending that action. The case was tried without a jury in January 1950 in the district court of Otter Tail county and resulted in a judgment against Mercury for the full amount of the Lyngstad judgment and the expenses incurred in defending that action plus interest and costs. The judgment further provided that if no appeal was taken to this court or if the decision against Mercury was affirmed on appeal, then the action was dismissed as to Hartford. Mercury now appeals from the whole of this judgment.

In July 1948, Gamble-Skogmo, which is engaged generally in the business of merchandising and selling various goods and merchandise including farm equipment through a chain of retail stores, sold a Cockshutt swather to two brothers, Frank and Walter Dietz. The sale involved the delivery of the swather from Gamble-Skogmo's store outlet at Fergus Falls, Minnesota, to the Dietz farm, a distance of several miles. A 1940 Chevrolet 1½-ton truck owned by Lawrence Jensen, a salesman employed by Gamble-Skogmo at the Fergus Falls store, was used to make the delivery. The Jensen truck was used pursuant to an arrangement under which Jensen was granted an operating allowance of 12 cents per mile when the truck was used on Gamble-Skogmo business, out of which Jensen

---

[2]This method of litigating the issue of insurance coverage has been viewed with favor by this court. See, St. Paul Mercury Ind. Co. v. Standard Acc. Ins. Co. 216 Minn. 103, 11 N. W. (2d) 794; Commercial Cas. Ins. Co. v. Hartford Acc. & Ind. Co. 190 Minn. 528, 252 N. W. 434, 253 N. W. 888.

paid all of the operating expenses of the truck. In order to transport the swather, which was loaded onto the truck at Fergus Falls, a part of the swather known as the hitch had to be disconnected from its operating position and elevated to a transport position. This procedure also involved disconnecting the tilting bar which is part of the hitch. Warren Sagerhorn, an employee of Gamble-Skogmo, drove the Jensen truck to the Dietz farm, and Albert Lindberg, another employee of Gamble-Skogmo, accompanied him as a helper. Upon arrival at the farm, the Dietz brothers and Lyngstad, an employee of the Dietz brothers at the farm, assisted Lindberg in reassembling the disconnected swather hitch and accompanying tilting bar in order to place the machine in ordinary operating position. This process of assembling the swather hitch and tilting bar was being performed while the swather was still located on the bed of the truck, the actual unloading or removing of the swather from the bed of the truck having not yet commenced. While they were so engaged in attempting to assemble the swather hitch and tilting bar, the tilting bar lever suddenly became released striking and injuring Lyngstad. At the time of the accident, the truck was parked in a private driveway and was not in motion or being operated in any way.

In the suit by Lyngstad which followed, Gamble-Skogmo, Lindberg, Sagerhorn, and Jensen were joined as defendants. The action against the latter two defendants was dismissed at the close of plaintiff Lyngstad's case; thus only the question of the possible liability of Gamble-Skogmo and Lindberg was submitted to the jury. The jury found against Gamble-Skogmo alone which under the instructions given by the court amounted to a determination by the jury that the cause of the accident was the failure on the part of Gamble-Skogmo to give adequate and proper instructions to Lindberg as to the proper and reasonably safe way in which to assemble the swather hitch and tilting bar and that Lindberg himself was not guilty of any negligence at the time and place of the happening of

the accident.[3] Prior to the accident, Lindberg had been in the employ of Gamble-Skogmo for only about a week as a part-time employee and had had no experience in setting up farm machinery. The supervisors and employees of Gamble-Skogmo who had the duty of instructing Lindberg with reference to the correct way to assemble a swather hitch and tilting bar were located at Fergus Falls and were not present during the delivery of the swather to the Dietz farm.

At the time of the accident in question, Gamble-Skogmo was the named insured in both a comprehensive automobile liability policy issued by American and in a comprehensive general liability policy issued by Mercury. In addition, a standard automobile policy issued by Hartford to Lawrence Jensen as the named insured contained

[3]The particularly pertinent parts of the court's charge to the jury in the Lyngstad action appear as follows:

"* * * There is a rule of law which is applicable to the employer, Gamble-Skogmo, Inc., and the employee, Albert Lindberg. It was the duty of the defendant, Gamble-Skogmo, Inc., to give adequate and proper instructions to Albert Lindberg as to the proper and reasonably safe way in which to assemble the swather hitch and tilting bar for use. If you find that the defendant, Gamble-Skogmo, failed to give such instructions to defendant Lindberg, then and in that event defendant Gamble-Skogmo was negligent in that respect. I further charge you that if defendant Gamble-Skogmo, Inc., was negligent in that respect, and if you further find that defendant Albert Lindberg was not guilty of negligence because of the failure of his employer, Gamble-Skogmo, Inc., to properly and adequately instruct him as to the proper and reasonably safe way to assemble the hitch, and if you further find that such negligence was the proximate cause of the accident and of plaintiff's injuries, and if plaintiff was not guilty of contributory negligence, then your verdict would be against Gamble-Skogmo alone. The failure of defendant Gamble-Skogmo, Inc., to give adequate and proper instructions to defendant Lindberg as to the proper and reasonably safe way in which to assemble this machine, if you find that such instructions were not given, that act of negligence is the only one which would enable you to return a verdict against Gamble-Skogmo alone.

"If you find negligence on the part of defendants in the other respects claimed by plaintiff, and that such negligence was the proximate cause of the accident, your verdict will be against both defendants, Gamble-Skogmo, Inc., and Albert Lindberg."

a definition of "insured" which was possibly broad enough to include Gamble-Skogmo. In view, however, of our disposition of this appeal, no description of the Hartford policy is necessary except to state that it insured against liability arising out of the ownership, maintenance, or use of an automobile, including the loading and unloading thereof.

The Mercury comprehensive general liability policy delineates insurance coverage as far as pertinent, in the following manner:

"INSURING AGREEMENTS

"COVERAGE A — BODILY INJURY LIABILITY

"To PAY any loss by reason of the liability imposed by law or contract upon the Insured for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons.

\* \* \* \* \*

"EXCLUSIONS

"This Policy does not apply:

"(a) except with respect to operations performed by independent contractors, to the ownership, maintenance or use, including loading or unloading, of (1) automobiles while away from premises (or the ways immediately adjoining) owned, rented or controlled by the Insured, or (2) aircraft;"

The policy further contained a special endorsement which reads as follows:

"Notice is hereby accepted that this policy covers the sale, demonstration, servicing and use of farm machinery and farm tractors of all types and kinds."

The pertinent insurance coverage afforded by the American comprehensive automobile liability policy appears as follows:

"INSURING AGREEMENTS

"COVERAGE A — BODILY INJURY LIABILITY

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him

by law, or assumed by him under any warranty of goods or products or any written contract, for damages, including damages for care and loss of services, because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person or persons and arising out of the ownership, maintenance, or use of any automobile, including the loading and unloading thereof."

Both the Mercury and the American policies contain the standard "Defense, Settlement, Supplementary Payments" clause which provides in effect that as respects such insurance as is afforded by the policy, the insurance company shall defend in the insured's name and on his behalf any suit against the insured alleging damages covered by the policy, even if such suit is groundless, false, or fraudulent.

Shortly after the accident involving Lyngstad, Gamble-Skogmo sent notice of its happening by letter to the Don Miller Company of Minneapolis (hereafter called Miller). Miller is an insurance agency which acts as agent of both American and Mercury in connection with writing insurance policies in which Gamble-Skogmo is the named insured and also in receiving notices and reports of accidents, claims, or lawsuits involving Gamble-Skogmo which are covered by the American or Mercury policies. Upon receipt of such reports from Gamble-Skogmo, it was customary for Miller in its own discretion to determine which of the two policies covered the claim or accident. Since the swather was physically on the truck at the time of the accident and had not as yet been unloaded, Miller assumed, as did Gamble-Skogmo as shown in its letter of notification to Miller, that the accident involved an automobile risk. As a result, only American was notified of the happening of the accident.

After notification, American commenced an investigation of the accident. During the same period Hartford also conducted an investigation of the accident. When the Lyngstad action was commenced, the summons and complaint were promptly sent by Gamble-Skogmo to Miller and were in turn relayed to American. Shortly thereafter American returned the summons and complaint to Gamble-Skogmo together with a request that they be forwarded

to Hartford, who American claimed was the primary insurer under their respective automobile liability policies. Upon the subsequent refusal of Hartford to accept the defense of the case on behalf of Gamble-Skogmo, the summons and complaint were again tendered to American. This time American agreed to assume the defense of Gamble-Skogmo and consequently interposed an answer on their behalf. Hartford undertook to defend the claim against Jensen, and both Hartford and American joined in the defense of Lindberg and Sagerhorn. Since Lyngstad's complaint alleged negligence on the part of the defendants only in general terms, both Hartford and American, before interposing the respective answers, made motions to make the complaint more definite and certain in an effort to ascertain the precise nature of the claim and the specific acts of negligence on which it was based. These motions, however, were denied.

Prior to the trial of the Lyngstad action every one connected with the investigation and defense of the case assumed that the accident and injuries involved an automobile risk covered either by the American or Hartford policies. On November 23, 1948, the second day of the Lyngstad trial, it became apparent for the first time to the attorneys representing the defendants that liability might be based on the failure of Gamble-Skogmo to give adequate and proper instructions to Lindberg as to the proper way in which to assemble the swather hitch and tilting bar. American notified Mercury immediately on that day by telephone, telegram, and letter of the situation and of the fact that any liability for the injuries to Lyngstad might be a general liability exposure covered under the Mercury policy. A copy of the Lyngstad summons and complaint was sent to Mercury at that time. Although Mercury learned of the occurrence of the Lyngstad accident one day before the trial, on Sunday, November 21, 1948, it was not until the second day of the trial that Mercury was informed in any way regarding the details of the accident and the fact that its policy possibly afforded insurance coverage. The trial lasted to and including November 26, 1948, including an adjournment over Thanksgiving day. During this time Mercury made no effort whatsoever to join in the defense of Gamble-Skogmo.

As a result the attorneys in charge of the defense completed the trial.

The verdict in favor of Lyngstad was for an amount considerably lower than would have been justified by the evidence in view of the very serious permanent injuries suffered by Lyngstad. After the verdict was returned and before judgment was entered, American notified Mercury in writing that if it thought it had been prejudiced in any way as a result of the verdict or trial, a new trial could be had and that Lyngstad would stipulate to a new trial because of his 'disappointment in the small size of the verdict. Mercury still refused to take any action in the matter. Before the judgment was entered and paid by American and the assignment made by Gamble-Skogmo to American, Mercury was notified of the contemplated procedure, and Mercury expressly agreed that American's rights to litigate the merits of this controversy as to the insurance coverage would not be prejudiced by American's paying the judgment and taking the assignment. Also, before the payment of the judgment and the execution of the assignment to American, Mercury, through its Minnesota claims attorney, stated at a conference at which Mercury, Hartford, and American were represented that it would make no point or claim of not receiving timely notice of the accident or the commencement of the suit.

■ Mercury advances several theories based primarily on the conduct and actions of Gamble-Skogmo and American in the handling of the original Lyngstad action which if applicable and sustained by the record as a matter of law would compel a reversal of the judgment against Mercury and render unnecessary any consideration of whether the Lyngstad accident involved an automobile risk covered by the American or Hartford policies or a general business liability risk covered by the Mercury policy. Mercury first contends that American has no right of action based on the assignment it received of Gamble-Skogmo's rights under the Mercury policy for the reason that Gamble-Skogmo had no rights against Mercury under the Mercury policy and thus nothing to assign. This contention is based on the premise that Gamble-Skogmo violated a condition of the Mercury policy which provides that "If * * * suit is

brought against the Insured, the Insured shall immediately forward to the Company every \* \* \* summons or other process received by him or his representative."[4]

It is unquestioned that Mercury was not notified of the Lyngstad accident until at least the day before the trial commenced and that copies of the summons and complaint served on Gamble-Skogmo in the Lyngstad action were not forwarded to it until the second day of the trial. Mercury admits that at the conference of attorneys, held after the Lyngstad trial and prior to American's receipt of the assignment from Gamble-Skogmo and payment of the judgment in favor of Lyngstad, it waived compliance by Gamble-Skogmo with the policy condition requiring notification of any accident within the coverage terms of its policy. Nevertheless, Mercury contends there was no waiver at that conference or any other time of the separate policy condition requiring the forwarding to it of the summons and other process served on Gamble-Skogmo in the Lyngstad action.

The trial court expressly found as a fact that Mercury stated that it would make no point or claim of not receiving notice both of the happening of the accident and the commencement of the suit. Mercury, however, contends that there is no evidence in the record to support this finding. An examination of the record discloses no evidence that Mercury expressly agreed not to raise the issue of lack of notice of the commencement of the Lyngstad action as distinguished from notice of the occurrence of the accident. However, there is testi-

---

[4]Other provisions of the Mercury policy which relate to the necessity of notifying the insurer of an accident, claim, or suit and the consequence of failing to so notify are as follows:

"CONDITIONS

"8. **Notice of Occurrence, Accident, Claim or Suit.** In the event of any occurrence or accident for which coverage is afforded by this Policy, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. \* \* \*

\* \* \* \* \*

"10. **Action Against Company.** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this Policy , \* \* \*."

mony by Kenneth C. Weyl, then Mercury's Minnesota claims attorney, that at the previously mentioned conference of attorneys he stated in general terms on behalf of Mercury that "we [Mercury] were not relying on the defense of late notice." Further, there is no evidence that those present at the conference in any way or for any purpose distinguished in their discussions between notice of the accident and notice of the commencement of the Lyngstad action. When considering the meaning to be attached to Mr. Weyl's statement that Mercury was not relying on the defense of late notice, it must also be noted that this unqualified remark was advanced at a conference of attorneys held for the express purpose of discussing and settling the complicated questions of insurance coverage raised by the Lyngstad judgment and after Mercury had been informed of the contemplated procedure. It is reasonable to assume that under such circumstances a discussion of the defense of late notice was intended to apply to all the problems of late notice in question. Since it is our opinion that the trial court could reasonably infer from Mr. Weyl's testimony and the surrounding circumstances that Mercury's waiver of notice was intended to include notice of the commencement of the Lyngstad action, we cannot say that its finding with respect thereto was clearly erroneous.[5]

However, Mercury further contends that since a policy provision requiring an insured to notify its insurer of the happening of an accident creates a separate and distinct duty from that created by a provision requiring that the insured immediately forward to the insurer any summons or other process received,[6] Gamble-Skogmo's failure to promptly comply with the latter condition precludes any recovery under the Mercury policy. The trial court did not find as a fact that Mercury waived the condition in its policy requiring Gamble-Skogmo to forward to it the summons and complaint which

[5]Rule 52.01 of Rules of Civil Procedure provides that "Findings of fact shall not be set aside unless clearly erroneous, * * *." See, State, by Burnquist v. Bollenbach, 241 Minn. 103, 63 N. W. (2d) 278.

[6]See, Minnesota Elec. Distributing Co. v. United States F. & G. Co. 173 Minn. 114, 216 N. W. 784; Campbell v. Continental Cas. Co. (8 Cir.) 170 F. (2d) 669, 6 A. L. R. (2d) 655.

were served upon Gamble-Skogmo in the Lyngstad action. However, it did expressly find that Mercury's statement and representation that it would make no point or claim as to not receiving notice of the happening of the accident or the commencement of the suit were relied upon by American and Gamble-Skogmo. It further found that Mercury is now estopped to question the right of American or Gamble-Skogmo to litigate the merits of the controversy over insurance coverage because of such statements and representations as well as by standing by and doing nothing and accepting the benefits of the defense and verdict and not seeking a new trial and that Mercury has not been prejudiced by any action or things done by either Gamble-Skogmo, American, or Hartford in connection with the investigation, trial, or handling of the Lyngstad accident, lawsuit, verdict, and judgment. In our opinion each of these findings is amply supported by the evidence. The record discloses that promptly upon learning on the second day of the trial that the basis of recovery in the Lyngstad action might involve a hazard covered by Mercury's policy, Gamble-Skogmo forwarded a copy of the summons and complaint to Mercury. In its letter of enclosure Gamble-Skogmo stated to Mercury as follows:

"* * * if it is determined that there is liability on the part of Gamble-Skogmo, Inc. and the matter of the liability is such that it properly comes under the coverage which we carry with you rather than our American Auto coverage, we will expect you to take care of it."

Mercury never responded to this letter and never returned the copy of the summons and complaint. In fact, it merely stood by and did nothing. Furthermore, it conclusively appears that Mercury was not prejudiced by Gamble-Skogmo's failure to immediately forward to it the summons and complaint served in the Lyngstad action because of its opportunity, which was declined, to have had a new trial of that action.

It is our opinion that the trial court was amply justified in finding an estoppel against Mercury and that such finding offers adequate grounds upon which to deny Mercury's contention that

American has no right of action based on the assignment from Gamble-Skogmo because of breach of the policy provision with respect to the forwarding of suit papers. Although the trial court also found as a fact that Mercury received proper notice under its policy by reason of the notice to Miller of the accident and commencement of the action, we have placed no reliance on this finding in reaching this conclusion and, therefore, it becomes unnecessary to pass upon its validity. Likewise, we have placed no reliance on the trial court's finding that Mercury expressly agreed that American's rights to litigate the issue of insurance coverage would not be prejudiced by American's paying the Lyngstad judgment and taking the assignment from Gamble-Skogmo. However, it should be pointed out that this finding of fact has not been assigned as error and, therefore, must be considered as true on appeal. See, Carl v. DeToffol, 223 Minn. 24, 25 N. W. (2d) 479; 1 Dunnell, Dig. (3 ed.) § 361.

■ Mercury also asserts that American is estopped to deny liability on the Lyngstad claim on the theory that where a liability insurer, with knowledge of all the facts and without a reservation denying liability under its policy, assumes exclusive control and conducts the defense of an action against its insured upon a claim alleged to be covered by the policy, the liability insurer becomes liable to pay any judgment recovered in such action regardless of defenses it might otherwise have as against the insured under the policy. Mercury relies upon a well-established line of Minnesota cases including Nikkari v. Jackson, 226 Minn. 393, 33 N. W. (2d) 36; Oehme v. Johnson, 181 Minn. 138, 231 N. W. 817, 81 A. L. R. 1308; Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790; and Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L.R.A. (N.S.) 184, in support of its contention. The rule laid down in those cases, however, has no application to the situation presented here. The primary reason for raising an estoppel against the insurer in favor of the insured in those decisions was to prevent possible unfairness to the insured which might result from the insurer's disclaiming any liability under the policy after the insured has abandoned to the insurer all control and voice in the defense of the lawsuit. This reason for the rule is

not present in the instant case where the estoppel is not being asserted by the insured but instead by another insurer. There is no privity between Mercury and Gamble-Skogmo for purposes of raising an estoppel as Mercury contends; rather it is more accurate to state that American as a result of the assignment from Gamble-Skogmo stands in the place of Gamble-Skogmo. Even if the rule advanced by Mercury were applicable to the situation presented in the instant case, it would not raise an estoppel against American as a matter of law since at the time American assumed control of the defense of the Lyngstad action it did not have a knowledge of all the facts concerning the question of insurance coverage. Furthermore, the trial court specifically made findings, which are amply supported by the evidence, to the effect that neither Hartford nor American were at fault in not discovering before the second day of the trial that liability for damages for the injuries to Lyngstad might be caused by failure of Gamble-Skogmo to give adequate and proper instructions to Lindberg as to the proper and reasonably safe way in which to assemble the swather hitch and tilting bar.

Mercury further contends that both Gamble-Skogmo and American are now estopped to assert any liability against it based upon the Lyngstad action. It is argued by Mercury that Gamble-Skogmo, by its indication to Miller that the American policy covered the accident, and American, by its accepting notice of the accident and conducting the defense of the Lyngstad action, initially took positions inconsistent with their present contention that insurance coverage for the injuries to Lyngstad is afforded solely by the Mercury policy. To allow Gamble-Skogmo and American to now change their positions would, it is argued, be prejudicial to Mercury for the reason that Mercury may be held liable as an insurer although deprived of the right to make its own investigation of the accident and conduct its own defense of the action in court.

The trial court specifically found that there are no facts upon which Mercury could equitably claim any waiver, estoppel, or procedural objection against American or Gamble-Skogmo which would prevent a consideration and decision of the question of insurance

coverage under the coverage provisions of the policies involved. It further found, as referred to previously, that Mercury was not prejudiced by any actions of either Gamble-Skogmo, American, or Hartford in connection with the investigation, trial, or handling of the Lyngstad accident, lawsuit, verdict, and judgment, and that Mercury is now estopped by reason of its own representations and conduct from questioning the right of American or Gamble-Skogmo to litigate the merits of the controversy over insurance coverage.

These findings are clearly supported by the evidence. The facts show that American promptly commenced an investigation of the accident after being notified of its occurrence. Because American was unable to determine from the complaint the exact acts of negligence relied upon for recovery by Lyngstad, it made a motion which was denied to make the complaint more definite and certain. Although reasonably diligent in its investigation and preparation for trial, American did not learn until the second day of trial that liability for damages for the injuries to Lyngstad might be caused by the failure of Gamble-Skogmo to adequately instruct Lindberg as to the proper way in which to assemble the swather hitch and tilting bar. At that time, American as well as Gamble-Skogmo immediately notified Mercury of the situation developing, but Mercury refused to take any action in the matter. The amount of the verdict was considerably lower than would have been justified by the evidence. Mercury was notified after the verdict was returned and before judgment was entered that Lyngstad was willing to stipulate to a new trial. If Mercury had agreed to a new trial, it would have had an opportunity to investigate the accident and conduct its own defense of the action, thus obtaining for itself the very rights which it claims to have been prejudicially denied. In light of the diligence shown on the part of American together with the opportunity presented to Mercury for a new trial, we find no basis for holding that American and Gamble-Skogmo are now estopped to litigate the merits of the controversy over insurance coverage.

■ Turning to the question of insurance coverage, the issue presented for decision is whether the liability of Gamble-Skogmo re-

sulting from the Lyngstad accident arose out of the ownership, maintenance, or use of an automobile including the loading and unloading thereof, in which event the loss is within the coverage provisions of the American or Hartford policies or both, or whether the accident involved a general liability hazard, coverage for which is provided by the Mercury policy. The trial court found that the risk and hazard involved in the Lyngstad accident was a general liability exposure. It based its decision, as disclosed by the comprehensive memorandum made a part of its findings of fact and conclusions of law, on the reasoning that the accident was solely caused as determined in the original Lyngstad action by the failure of Gamble-Skogmo to properly instruct its employee Lindberg as to the proper way to assemble the swather hitch and tilting bar and that this duty of instructing related to the general business activities of Gamble-Skogmo, it being entirely disassociated from the operation of the automobile-truck or its unloading. This also in essence is primarily the reasoning relied upon by both American and Hartford for affirmance of the judgment against Mercury by this court. On the other hand, Mercury argues that the act which caused the injury to Lyngstad was the act of assembling the swather in a negligent manner and not the failure to properly instruct Lindberg, the latter omission which occurred some distance from the scene of the accident being by itself not negligent or actionable for the reason that it caused no harm. Mercury concludes that since the injury to Lyngstad resulted from a negligent act occurring during the assembling of the swather, which it contends was an incident of the unloading process, the accident involved an automobile risk within the coverage provisions of either the American or Hartford policies or both.

It should be made clear at the outset that Mercury's argument is based on an erroneous conception of the facts relating to the cause of the accident. The negligent act which caused the injury to Lyngstad and for which Gamble-Skogmo was held liable was the failure of Gamble-Skogmo to properly and adequately instruct Lindberg in Fergus Falls as to the proper and reasonably safe way in which

to assemble the swather hitch and tilting bar. Lindberg was not guilty of any act of negligence during the process of assembling the swather; in fact, Gamble-Skogmo's liability was not founded on a single negligent act occurring at the time or place of the injury to Lyngstad. Under the jury instructions and resulting verdict in the original Lyngstad action from which no appeal was taken, the foregoing facts concerning the act of negligence on which Gamble-Skogmo's liability to Lyngstad was based were clearly established, and that determination is binding upon the insurance companies involved in the present action.[7] The trial court made findings of fact to the same effect which are fully supported by the evidence and which, in fact, are not even assigned as error on appeal. Although Mercury was not a party to the Lyngstad action and was not promptly notified in fact of the commencement of that action, the jury's determination is the law of the case and is binding upon Mercury if for no other reason because Mercury had an opportunity' which was not exercised to protect its interests by defending the Lyngstad claim through the medium of a new trial which was agreeable to all parties concerned.

Despite the obvious error in Mercury's contention that the injuries to Lyngstad were caused by negligence which occurred during the process of assembling the swather at the Dietz farm, there still remains the perplexing problem of ascertaining whether the injuries to Lyngstad arose out of the use of an automobile or the unloading thereof. In determining this issue the controlling consideration is whether the cause of the accident, in this instance the failure to adequately instruct Lindberg as to the method of assembling a swather hitch and tilting bar, is a peril relating to the hazards of an automobile or instead is a general business risk of Gamble-Skogmo. In order for an insurer to be liable on its policy of insur-

_____

[7]See, Fidelity & Cas. Co. v. Minneapolis Brg. Co. 214 Minn. 436, 8 N. W. (2d) 471; Edinger & Co. v. Southwestern Surety Ins. Co. 182 Ky. 340, 206 S. W. 465; American Candy Co. v. Aetna L. Ins. Co. 164 Wis. 266, 159 N. W. 917. We do not purport, however, to pass upon the validity of the theory, as embodied in the jury instructions, under which the Lyngstad action was submitted to the jury.

ance, the peril insured against must be the cause of the loss. See, 7 Appleman, Insurance Law and Practice, § 4322; 5 Cooley, Briefs on Insurance (2 ed.) p. 4779; 6 Couch, Cyc. of Insurance Law, § 1463. The business risks of Gamble-Skogmo for purposes of insurance coverage were divided between those involving the use, ownership, and maintenance, including the loading and unloading, of an automobile on the one hand and all other general business liability risks on the other. This court attempted to prescribe the limits and application of these two categories of hazards in St. Paul Mercury Ind. Co. v. Standard Acc. Ins. Co. 216 Minn. 103, 110, 11 N. W. (2d) 794, 797, where it stated:

"The cases cited show that a practice prevails among insurance underwriters and those procuring insurance to divide insurance coverage according to risks involved. General and comprehensive liability policies are issued to cover all risks incident to operation of a business, except those involved in the ownership, maintenance, operation, and use of automobiles. Because the ownership, maintenance, operation, and use of automobiles involve special and peculiar risks as an incident thereof, to which the general business of the insured is not subject, such risks are excluded from the general coverage and are covered as a special class by automobile liability policies. In a sense, automobile risks are incidental to the operation of a business, but for purposes of insurance coverage they are dealt with as a separate class. The policies covering such risks relate to the hazards involving the automobile itself. The line is drawn between risks incident to the general business and those incident to the automobile while being used to accomplish limited operations involved in such business. Delivery involves operations not included in the use of an automobile to transport goods. It involves both general business and automobile risks. Risks incident to 'unloading' an automobile pertain to the vehicle, not to the general business of the insured."

The difficult problem which such a division of risks has created in the instant case is to the best of our knowledge one of first impres-

sion involving an interpretation of the standard type automobile liability policy and in particular the clause providing coverage for injuries arising out of the loading and unloading of an automobile. Its uniqueness stems from the fact that the accident in question was not caused by any negligent act occurring at the time and place of the process of unloading but rather by an independent negligent act which, though so removed from the unloading process, nevertheless, had some connection with the unloading process and the effect of which was manifested during the course of the actual unloading operations.

The vast bulk of cases concerned with an interpretation of the coverage afforded by the standard loading and unloading clause have involved a determination of the point in a sequence of events relating to the delivery of goods or merchandise at which the process of unloading terminates for purposes of insurance coverage.[8] However, since it is clear that no such issue is presented in the instant case, there being no claim that the unloading operations had ceased at the time of the accident, these cases provide no assistance in resolving the present question. The converse problem of deciding when unloading operations commence under the terms of the standard loading and unloading clause is raised by the contention of both American and Hartford that unloading operations had not as yet started at the time of the accident because of a specific finding of fact by the trial court to the effect that the swather was being assembled preparatory to its being unloaded from the bed of the Jensen truck and that unloading operations had not yet commenced. However, for purposes of this opinion we will assume without de-

---

[8]See, Annotation, 160 A. L. R. 1259; Insurance L. J., 1951, p. 745. This court has decided two cases involving an interpretation of the standard loading and unloading clause and in both it has adopted the so-called coming to rest theory as opposed to the complete operations theory, the latter theory being the more liberal in the sense of defining a wider scope of insurance coverage under that clause. See, Franklin Co-op.. Creamery Assn. v. Employers' Liability Assur. Corp. Ltd. 200 Minn. 230, 273 N. W. 809; St. Paul Mercury Ind. Co. v. Standard Acc. Ins. Co. 216 Minn. 103, 11 N. W. (2d) 794.

ciding that unloading operations as defined in the American and Hartford policies were in progress at the time of the Lyngstad accident.

A question somewhat similar to that presented in the instant case was considered by the supreme court of Washington in Handley v. Oakley, 10 Wash. (2d) 396, 116 P. (2d) 833. In that case a truck load of ice cream was being dispensed at an athletic field during a Labor Day celebration. The truck was parked a short distance from a baseball diamond where a baseball game was in progress. While a boy was standing alongside the ice-cream truck buying some ice cream, a foul ball, coming from the adjacent ball game, hit the boy, injuring him. The Washington court, in holding that the injury to the boy did not arise out of the use or unloading of the ice-cream truck, adopted the theory that the accident was primarily caused by the ball game rather than any act associated with the use or unloading of the truck, the truck being but the place where the accident occurred. The Handley case is analogous to the instant case in the sense that the accident in both was caused by an act which, though not a part of the physical acts attendant to the use or process of unloading a truck, nevertheless, brought about injury during the time and at the place of the use or unloading of the truck. However, a difference between the two cases can be observed from the fact that a relationship between the negligent act causing the injury to Lyngstad and the use or unloading of the Jensen truck is more direct than the association between the ball game and the ice-cream truck in the Handley case. In both, the cause of the accident was related to the use of the truck or its unloading in the sense that the accident occurred during the period of use or unloading of the truck. However, in the instant case a further relationship can be deduced from the fact that the negligently omitted instructions on how to properly assemble a swather hitch and tilting bar concerned the method of performing a function which was necessary to the unloading of the swather from the bed of the truck. Nevertheless, it is our considered opinion that the peril involved in failing to adequately instruct Lindberg involved a general business liability

risk for which insurance coverage was afforded by the terms of the Mercury policy. It is clear that standing alone the risk of failing to properly and adequately instruct employees regarding their duties during employment is a general business risk unrelated to the use or unloading of an automobile. The mere fact that the negligently omitted instructions concerned one step in the proper manner of performing a task necessary to unloading an object from the truck does not transform an otherwise general liability risk into an automobile hazard. The negligent act causing the injury to Lyngstad was removed from the unloading operations both in the sense that it occurred prior to the accident and also some distance away from the scene of the accident. Any connection it does have with the Jensen truck or the unloading operations therefrom is too remote to allow us to hold that the injurious effects it caused arose out of the use or unloading of an automobile within the terms of the Hartford or American policies.

It should further be pointed out that although we have made no reference to the special endorsement in the Mercury policy and place no reliance on it in making this decision, it may well be that this endorsement is sufficient in itself to provide coverage under the Mercury policy.

Mercury's further assignments of error with respect to the trial court's rulings on the admissibility of certain testimony by an attorney for American that in his opinion the verdict in favor of Lyngstad was low and that the evidence in the Lyngstad action would have justified a considerably higher verdict have been considered but found not to present grounds for reversal. Everyone concerned with the Lyngstad action conceded that the verdict was low and beneficial to the defense. In fact, Lyngstad's counsel so stated in his offer to stipulate for a new trial. Accordingly, even if error be assumed it was without prejudice.

The judgment entered in favor of American includes recovery for the full amount of the Lyngstad judgment together with the expenses American incurred in defending that action plus interest and costs. Since the question of whether American has a right to recover

the expenses incurred in the defense of the Lyngstad action is not specifically raised by the assignments of error or argued by Mercury orally or in its brief, it is not presented for our determination.

For the reasons stated, the judgment appealed from should be affirmed.

Affirmed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.