WARNER HARDWARE COMPANY v.
ALLSTATE INSURANCE COMPANY.
CHARLES A. PAYNE AND OTHERS,
THIRD-PARTY DEFENDANTS.

245 N. W. 2d 223.

August 6, 1976—No. 46169.

*Miller, Neary & Zins* and *Joseph M. Goldberg*, for appellant.
*Robert L. Hoppe*, for respondent Allstate.
*Fitzgerald & Crandall* and *William Crandall*, for respondents Payne.

Heard before Peterson, Yetka, and Marsden, JJ., and considered and decided by the court en banc.

DAVID E. MARSDEN, JUSTICE.*

Mrs. Robert W. Payne ordered a snowblower from a Warner Hardware store and requested delivery. Generally, the store did not make deliveries, and therefore it maintained no trucks for that purpose. When deliveries were made upon request, they were made in private vehicles of store employees. Delivery of this snowblower to the Payne residence was authorized by the store manager, and the snowblower was loaded into the trunk of a car owned by Steven R. Jacobsen, a Warner employee. Because the snowblower weighed approximately 280 pounds, Warner would ordinarily have sent a second employee with Jacobsen to help unload it. However, in this case Warner planned to have someone at the Payne residence assist Jacobsen. When Jacobsen arrived at the Payne residence late in the afternoon of December 17, 1969, Mrs. Payne sent her 18-year-old son Charles out to help unload the snowblower. As Jacobsen and Charles were lifting the snowblower from the trunk of Jacobsen's car, Charles lost his footing in the slush and ice which had accumulated at the curb. He fell and the snowblower landed on his fingers.

In a personal injury action brought by Robert W. Payne on behalf of himself and his son, the jury found that Jacobsen had not been negligent, that Charles had been negligent but his negligence had not been a direct cause of the accident, and that

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

Warner had been negligent and its negligence was the sole cause of the accident. Damages of $5,000 were awarded. The significance of this jury verdict is that, if Jacobsen did nothing for which Warner could have been vicariously liable at the unloading site, Warner's negligence must have occurred at a more remote time and place, i. e., when selecting this method of delivery.

At the time of the accident, Jacobsen's automobile was insured with Allstate Insurance Company under a policy which included the following provisions:

"Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:

"A. bodily injury sustained by any person, and

"B. injury to or destruction of property, arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile.

"Allstate will defend any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this policy, but may make such settlement of any claim or suit as it deems expedient.

\* \* \* \* \*

"\* \* \* the following persons are insured under this Part:

"1. The named insured with respect to the owned or non-owned automobile;

\* \* \* \* \*

"5. Any other person or organization with respect to any automobile or trailer, provided;

(a) The actual use is by a person who is an insured under any of the four preceding paragraphs, with respect to such automobile or trailer, and

(b) Such other person or organization is legally responsible for the use and, except with respect to a temporary substitute automobile, does not own or hire the automobile or trailer."

Warner carried general business liability insurance with Sentry Insurance Company under a policy which provided in pertinent part as follows:

"Exclusions

This insurance does not apply:

\* \* \* \* \*

"(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any automobile \* \* \* loaned to any insured, or

(2) any automobile \* \* \* operated by any person in the course of his employment by any insured."

Thus, because the "loading and unloading" clause operated as an inclusion in the Allstate policy and an exclusion in the Sentry policy, if the accident is covered by that clause, only Allstate had an obligation to defend and indemnify Warner in the personal injury action. Warner tendered defense of Payne's complaint to Allstate under Jacobsen's policy, but Allstate refused to defend Warner.

In this action Warner sued Allstate, alleging that under Jacobsen's policy it was entitled to indemnification and reasonable attorneys fees.

The trial court granted summary judgment to Allstate and in its order recited the jury's findings in the action brought by the Paynes. The court entered a conclusion of law that the jury finding of negligence on Warner's part was due to its selection of the method of delivery of the snowblower.

The issue presented is whether the negligence which resulted in injury to Charles Payne was a general business risk covered by Sentry or an automobile risk covered by Allstate. At oral argument Warner conceded that Sentry defended the Payne action and paid the verdict.[1] It is obvious that Sentry is the real party in interest in this action.

This case is controlled by Gamble-Skogmo, Inc. v. St. Paul Mercury Ind. Co. 242 Minn. 91, 64 N. W. 2d 380 (1954). There a truck belonging to a Gamble-Skogmo employee, Lawrence Jen-

---

[1] Allstate made a motion to join Sentry as the real party in interest, but the trial court, after granting Allstate summary judgment, regarded the motion as moot.

sen, was used to deliver merchandise to customers Frank and Walter Dietz. The merchandise was a piece of equipment which required assembly prior to unloading from Jensen's truck. Albert Lindberg, another Gamble-Skogmo employee, was sent as a helper to Warren Sagerhorn, the employee who drove the truck. While Lindberg and others were assembling the equipment on the bed of the truck, a lever suddenly became released, injuring Oscar Lyngstad, a Dietz employee. In a personal injury action brought by Lyngstad against Lindberg and Gamble-Skogmo, the jury found that Lindberg had not been negligent and that the sole cause of the accident was Gamble-Skogmo's failure to give adequate instructions to Lindberg regarding assembly. The judgment was paid by Gamble-Skogmo's automobile liability insurer, American Automobile Insurance Company. American then sued Gamble-Skogmo's general liability insurer, St. Paul Mercury Indemnity Company, to establish that the accident was covered by the latter's policy. As here, the Gamble-Skogmo case turned on the "loading and unloading" clause which would include coverage under the American policy and exclude coverage by St. Paul Mercury Indemnity Company. The court held that the accident was not a hazard relating to the unloading of the truck, but a general business risk. 242 Minn. 111, 64 N. W. 2d 392. In reaching this conclusion, the court began with the unchallenged jury verdict in the preceding personal injury case brought by Lyngstad, which established as the law of the Gamble-Skogmo case that the cause of the accident was Gamble-Skogmo's inadequate training of Lindberg. 242 Minn. 107, 64 N. W. 2d 390. The court stated:

"* * * It is clear that standing alone the risk of failing to properly and adequately instruct employees regarding their duties during employment is a general business risk unrelated to the use or unloading of an automobile. The mere fact that the negligently omitted instructions concerned one step in the proper manner of performing a task necessary to unloading an object from the truck does not transform an otherwise general liability

risk into an automobile hazard. The negligent act causing the injury to Lyngstad was removed from the unloading operations both in the sense that it occurred prior to the accident and also some distance away from the scene of the accident." 242 Minn. 111, 64 N. W. 2d 392.

Warner argues that Gamble-Skogmo is distinguishable and that the case at bar is controlled by Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co. 268 Minn. 390, 129 N. W. 2d 777 (1964), hereafter Soo Line. In the Soo Line case, an injury was caused by the dropping of a 900-pound crate during loading. Oscar Ahlstrom, the person injured, was helping a Soo Line employee load the crate on Ahlstrom's truck. In a personal injury action by Ahlstrom against the Soo Line, Ahlstrom prevailed. The Soo Line then sought indemnity under the "loading and unloading" clause of the automobile liability insurance policy covering Ahlstrom's truck. An unresolved fact question was whether the accident was caused by Amundson's failure to warn Ahlstrom that the crate was top-heavy or by Amundson's negligence in leaning the crate in a tilted position when he knew it to be top-heavy. 268 Minn. 399, 129 N. W. 2d 783. The court held that even if the cause had been Amundson's failure to warn, the Gamble-Skogmo case was distinguishable.

"* * * Gamble-Skogmo's failure to instruct its employee occurred prior to, and some distance from, the accident. Moreover, the instructions which should have been given were not peculiarly related to the hazards of unloading the farm implement. Although Gamble-Skogmo's failure to instruct manifested itself when the unloading process was about to commence, Gamble-Skogmo's duty to instruct existed because the hazards connected with the employee's overall performance of his job—loading and unloading being merely a part thereof—demanded that the employee have a knowledge of how to assemble the farm implement. In the instant case Amundson's failure to warn occurred at the time and place of the loading process. And, more important, the warning which should have been given was integrally related

to the hazards of loading the crate. Unlike Gamble-Skogmo, Amundson had no general duty to inform Ahlstrom of the crate's top-heavy nature. Whatever duty he owed Ahlstrom arose as a result of the foreseeable danger which was inherent in the immediate situation—wheeling a 900-pound crate, which Ahlstrom did not know to be top-heavy, over a steel plate." 268 Minn. 400, 129 N. W. 2d 784.

From this language, two considerations emerge as determinative. First, did the negligent act occur at a time and place remote from the loading or unloading? Here, as in Gamble-Skogmo, we have an unchallenged jury verdict in the personal injury action which establishes that the negligent act by Warner occurred at the store and prior to the accident, when Warner selected this method of delivery.

The second and more important consideration in the Soo Line case is whether the negligent act was "peculiarly" or "integrally" related to the hazards of loading or unloading. Warner argues that if the risk is such that it could only cause injury or damage during that portion of the conduct of a business which involves the use, including loading and unloading, of a vehicle, then it is an automobile liability risk.

That proposition is overly broad and unsupported by authorities apart from a possible interpretation of Soo Line. It should be noted that there are important factual differences between Soo Line and the present case.

Thus, we are not prepared to say that selection of a negligent method of doing business, which can only cause an accident during loading or unloading of a vehicle, is always covered by automobile liability insurance rather than general business liability insurance. We think the trial court's function in such cases is to determine on the particular facts involved whether the negligent act was more in the nature of a general business risk or an automobile hazard. Here, based on the facts and the jury findings in the Payne action, the trial court properly concluded that the

risk was more integrally related to Warner's chosen method of doing business than to the unloading of Jacobsen's car.

Affirmed.