**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALLIANCE GENERAL INSURANCE
COMPANY,
Plaintiff-Appellee,

v.

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, Member of

the American International Group,
Defendant-Appellant,

and

DELORES MARIE VAUGHAN; MORGEN
INDUSTRIES, INCORPORATED,
Defendants.

No. 97-1432

ALLIANCE GENERAL INSURANCE
COMPANY,
Plaintiff-Appellant,

v.

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, Member of

the American International Group,
Defendant-Appellee,

and

DELORES MARIE VAUGHAN; MORGEN
INDUSTRIES, INCORPORATED,
Defendants.

No. 97-1475

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Tommy E. Miller, Magistrate Judge.
(CA-95-1113-2)

Argued: October 31, 1997

Decided: January 29, 1998

Before WIDENER and ERVIN, Circuit Judges, and
BULLOCK, Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Widener and Chief Judge Bullock joined.

_____

## COUNSEL

**ARGUED:** George Janis Dancigers, Thomas Saunders Berkley,
HEILIG, MCKENRY, FRAIM & LOLLAR, P.C., Norfolk, Virginia,
for Appellant. Jamie Anderson Stalnaker, WILLIAMS, KELLY &
GREER, Norfolk, Virginia, for Appellee. **ON BRIEF:** Rebecca L.
McFerren, WILLIAMS, KELLY & GREER, Norfolk, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

ERVIN, Circuit Judge:

This appeal arises from a declaratory judgment in the district court
that The Insurance Company of the State of Pennsylvania, a member

2

of the American International Group (AIG), should indemnify the Alliance General Insurance Company (Alliance) for damages and fees paid by Alliance in the defense of an insured who had two successive insurance policies, one issued by Alliance and one by AIG. The district court, finding that AIG should have had primary responsibility for defending the insured and paying any successful claims, ordered indemnification on the grounds of unjust enrichment and equitable subrogation.

The issues raised on appeal by AIG are 1) whether Alliance is estopped from claiming indemnity because it undertook responsibility for litigating the case for the insured; 2) whether Alliance had a contract with AIG by which Alliance agreed to be primary carrier in this case; and 3) whether AIG was unduly prejudiced by Alliance's conduct in the case, including its choice of attorney. On cross-appeal, Alliance requests prejudgment interest on the monies the district court ordered AIG to pay. Finding no merit in the above arguments, we affirm the judgment of the court below.

I.

Delores Vaughan was injured in Virginia on August 13, 1987, while working on a piece of equipment manufactured by Morgen Industries, a South Dakota company. Alliance had issued a "claims made" insurance policy to Morgen Industries effective October 1, 1986 to October 1, 1987. A "claims-made" policy covers claims actually made during the time the policy is in force, regardless of when the underlying incident happened. The Alliance policy was renewed twice, through October 1, 1989. Alliance issued the policy from its Illinois office and sent the policy first to J.H.C. Insurance Group, an independent insurance broker in Minnesota, which forwarded the policies to Universal Insurance Services, an independent agent in Michigan. Universal then forwarded the policy on to Morgen in South Dakota.

AIG issued a "claims-made" policy to Morgen from its Pennsylvania office that succeeded the Alliance policy and was effective from October 1, 1989 through October 1, 1990. AIG also delivered its policy first to J.H.C. Insurance in Minnesota, which then sent it to Universal in Michigan, which in turn sent it to Morgen.

3

When Ms. Vaughan's injury occurred, Morgen notified J.H.C. that a potential claim existed. J.H.C. in turn informed Alliance of the injury. Though Ms. Vaughan's injury occurred in 1987, she did not file suit against Morgen until August 14, 1989, two months before Alliance's coverage ended. Morgen was not served with Vaughan's motion for judgment until July 12, 1990, after AIG's policy came into effect. Morgen delivered the court documents to Universal, which delivered them to J.H.C., which then notified both Alliance and AIG of the claim.

Alliance had investigated the potential claim and monitored its progress from the time it was informed of Ms. Vaughan's injury. In mid-1990, Alliance believed it should be the primary carrier. AIG agreed to be excess carrier, though internal AIG documents indicate that AIG executives questioned that division of responsibility. Alliance's coverage was capped at $1,000,000, but the claim for damages and probable attorneys' fees seemed likely to exceed that amount. As excess carrier, AIG would pay any amount owing over the $1,000,000 limit. AIG's policy did not have a similar cap.

Alliance thus litigated the Vaughan case, which eventually went to the Virginia Supreme Court. AIG monitored the case, but did not participate in the litigation. Ms. Vaughan won a settlement of $850,000, and attorneys' fees amounted to $463,750.30. In 1996, when reviewing the file on the Vaughan judgment in preparation for paying the claim up to $1,000,000 (AIG paid the excess), Alliance's general counsel realized for the first time that AIG should have been primary insurer all along, and notified AIG's counsel of that fact. AIG did not accept Alliance's tender of responsibility, and Alliance filed for a declaratory judgment in the district court. The parties agreed to have all proceedings heard by a magistrate judge under 28 U.S.C. § 636(c). The district court entered a final order on February 6, 1997; this timely appeal followed under 28 U.S.C. § 1291.

II.

The district court determined that the claim was made when Morgen was served with the motion for judgment in the Vaughan suit in July, 1990, during which time Morgen was covered by its insurance contract with AIG. Neither party disputes this conclusion. Rather, the

4

first issue in contention is whether Alliance's mistaken assumption of coverage precludes it from now seeking indemnification from AIG.

A.

The district court, sitting in diversity, applied the choice-of-law rules of the forum, Virginia, to determine which state's law to apply to the merits of the case. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Virginia law provides that the law of the place of contracting applies to the performance of the policy when an insurance policy has multistate coverage. Ryder Truck Rental, Inc. v. UTF Carriers, Inc., 790 F. Supp. 637, 641-642 (W.D. Va. 1992). Under Virginia law, an insurance contract is binding upon "delivery." Hancock v. Smith, 90 F. Supp. 45, 49 (W.D. Va. 1950); Pacific Fire Ins. Co. v. Bowers, 175 S.E. 763, 766 (Va. 1934). The district court found that both insurance contracts became effective upon their delivery to J.H.C., as Morgen's broker, in Minnesota. The district court accordingly applied Minnesota law to the merits of the case under Virginia choice-of-law rules, since Minnesota was the place of contracting and the policies had multistate coverage.

It is, of course, firmly established that we review the district court's findings of fact for clear error and its conclusions of law de novo. Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir. 1994). Where delivery of the insurance contract took place is a factual issue and as such is reviewed for clear error. A factual finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). A district court may clearly err if its factual determinations are not supported by substantial evidence. Jiminez v. Mary Washington College, 57 F.3d 369, 379 (4th Cir. 1995), cert. denied, 116 S.Ct. 380 (1995).

Though the district court could have more clearly identified the basis for its determination that J.H.C. acted as Morgen's agent, substantial evidence supports the district court's conclusion. An "independent broker" who is not an agent for any particular insurance company is generally held to act as an agent for the insured. Bowers,

5

175 S.E. at 765; In re Jones, 19 B. R. 293, 295 (E.D. Va. 1982); see also 3 Couch on Insurance, § 45:4 (3d ed. 1996). J.H.C., identified as an "independent broker" in the stipulation of facts, was also stipulated to have advised Alliance of the accident "on behalf of Morgen." AIG itself, in a July 1990 report on the claim, stated that Morgen had notified "their insurance broker" of the incident in 1987. Based on these facts, the district court's decision to apply Minnesota law based on its conclusion that the insurance contracts were completed on delivery to J.H.C. was not clearly erroneous.

AIG's suggestion that the district court could just as easily have found that delivery occurred in Michigan to Universal, an "independent agent," does not compel a different conclusion. The record also shows that Universal acted on behalf of Morgen with respect to the claims. Even if there are two permissible views of the evidence, the district court's choice of one of them cannot be clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).

We review de novo the district court's application of Minnesota law to the facts. Hendricks, 39 F.3d at 512. AIG's primary argument is that Alliance is estopped from claiming indemnification by having assumed and conducted Morgen's defense. Under Minnesota law, this argument must fail.

While Minnesota recognizes that estoppel will prevent an insurer from later denying liability against an insured once the insurer has assumed the defense of the insured, that estoppel does not apply in the case of one insurance company seeking estoppel against another. Gamble-Skogmo, Inc. v. St. Paul Mercury Indem. Co. , 64 N.W.2d 380 (Minn. 1954). The estoppel rule is to protect the insured once she has given up all control of her defense in the lawsuit, and as such does not apply between insurers. Id. at 388-89; Iowa Nat'l Mut. Ins. Co. v. Liberty Mut. Ins. Co., 464 N.W.2d 564, 568 (Minn. App. 1990).

Minnesota courts have, moreover, refused to use the doctrine of estoppel to enlarge the coverage of an insurance policy to include something not previously covered. Minnesota Mut. Fire & Cas. Co. v. Rudzinski, 347 N.W.2d 848, 851 (Minn. App. 1984). The Minnesota Supreme Court has refused to compel one party to pay another's debt, and has stated that one insurer should not be penalized for

6

promptly paying a debt owed by another. Iowa Mut., 464 N.W.2d at 567. Alliance, then, should not be penalized for having assumed responsibility for Morgen's defense, and the district court properly ordered AIG to reimburse Alliance for the fees incurred in defending the Vaughan suit.

AIG also argues that Alliance waived any right it had to indemnify AIG by assuming responsibility for Morgen's defense. In Gamble-Skogmo, the facts were such that it was unclear where the negligence occurred, which in turn had a direct effect on which insurer was liable for coverage. In this case, further investigation on the part of Alliance should have revealed that the claim was made during AIG's period of coverage, rather than Alliance's. Nevertheless, neither a mistake of law nor a mistake of fact will act as a voluntary relinquishment of a known right. Rudzinski, 347 N.W.2d at 851. AIG's waiver of rights argument is therefore unpersuasive.

B.

AIG argues that it had a contract with Alliance by which Alliance agreed to assume primary coverage of the claim and which Alliance cannot now breach. AIG did not raise this argument below, however, and thus cannot raise it here. Absent plain error that would result in a denial of fundamental justice, we will not address for the first time on appeal issues that were not raised in the court below. United States v. Bornstein, 977 F.2d 112, 115 (4th Cir. 1992); Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991). Failure to consider AIG's contract claim does not reach that standard.

AIG contends that it did raise the issue; however, even an expansive reading of the proceedings in the court below reveals at most that AIG asserted that it had an "implied-in-law" contract with Alliance by virtue of Alliance having assumed Morgen's defense. The "implied-in-law" contract theory is apparently a version of the estoppel and waiver of rights theory that AIG contends prevents Alliance from now seeking subrogation.

C.

AIG also seeks relief from the district court's determination that AIG must properly pay not only Vaughan's damages award but also

7

the attorneys' fees incurred by Alliance defending the suit, since those costs were part of the costs of defending the lawsuit. AIG contends that forcing it to pay unreasonably high attorneys' fees in a case in which it had no say in directing the defense would cause it undue prejudice.

In a similar case, the Minnesota Appeals Court found the second insurer was estopped from making such a claim. In <u>Iowa National</u>, the second insurer refused to take over the defense when it was tendered, but "stood by and did nothing while accepting the benefits of the defense." 464 N.W.2d at 568. AIG is in a similar position here. It is true that Alliance did not tender the defense to AIG before trial because of the mistaken belief it should be primary carrier. This consideration is more than counterbalanced by the fact that AIG, whose internal documents revealed its strong suspicion that Alliance had assumed primary responsibility in error, purposefully did not raise the coverage issue with Alliance in the hope that AIG could continue to benefit from Alliance's mistake. Because AIG did not discuss its concerns with Alliance, the district court properly held that AIG was estopped from raising undue prejudice as a defense.

D.

The district court's decision not to grant prejudgment interest to Alliance is reviewed for abuse of discretion under Virginia law, which governs prejudgment interest awards in diversity cases. <u>United States v. Dollar Rent A Car Sys., Inc.</u>, 712 F.2d 938, 940-41 (4th Cir. 1983); <u>Continental Ins. Co. v. City of Virginia Beach</u>, 908 F. Supp. 341 (E.D. Va. 1995).

Virginia law requires a court to balance the equities of the case when determining whether to award prejudgment interest. <u>McDevitt & Street Co. v. Marriott Corp.</u>, 754 F. Supp. 513, 515 (E.D. Va. 1991), <u>aff'd in relevant part</u>, 948 F.2d 1281 (4th Cir. 1991). The district court found that while Alliance was entitled to recover the sums it disbursed in defending the claim, Alliance was not without fault in the matter. Had Alliance exercised better care, the case would never have been at this stage in the legal proceedings, and therefore Alliance was not entitled to prejudgment interest.

Alliance argues that the district court incorrectly applied McDevitt, distinguishing that case by the degree of wrongdoing on the part of the seeker of interest. This claim is unpersuasive, since the district court must weigh the equities in any particular case. The district court acted reasonably when it determined that Alliance was not entitled to prejudgment interest. We certainly cannot say that the denial of pre-judgment interest was an abuse of discretion.

III.

For the reasons stated above, we affirm the judgment of the court below.

AFFIRMED

9