One Borer sustained personal injury at the hands of a servant of Hamilton Farms, Inc., a dairy concern (hereinafter referred to as the "assured"), while engaged in the master's service; and the point in controversy is which of two policies of liability insurance, issued by plaintiff and defendant, respectively, affords indemnity coverage.
Borer instituted action to recover the consequent damage. Each insurer denied coverage, and, upon defendant's refusal so to do, plaintiff undertook defense of the action, and gave notice to defendant that it "would look to" it "for reimbursement in the event of an adverse verdict." That contingency happened. Plaintiff paid the judgment entered thereon, and received from the assured "an assignment of its rights against the defendant" under the latter's policy. Defendant concedes "plaintiff's right to sue in its own name for the amount claimed;" and it was stipulated that judgment should go in accordance with the determination of the issue stated above.
The insuring clause of the public liability policy issued by plaintiff covers accidents caused by the assured's drivers and chauffeurs, "except those arising in connection with the maintenance, use or operation of teams or motor vehicles."
The pertinent provision of defendant's policy obligates it "to pay * * * each loss by reason of liability imposed upon" the assured "by law for damages, * * * caused by an accident * * * by reason of the use, ownership, maintenance, or operation of the motor vehicle or trailer, or, if the motor vehicle is of the commercial type, by reason of the loading or unloading of merchandise, provided the insured has, as respects such loading or unloading operations, no other collectible insurance."
The accident occurred while these policies were in force; and the facts are not in dispute. It is stipulated that a chauffeur of assured "had driven an automobile belonging to said concern to the store of Borer, who was a customer of said corporation and had removed from said automobile truck a can of milk and a cake of ice, which milk and ice the chauffeur had carried from said automobile to the store of the said *Page 319 
Borer and while placing the milk and ice in an icebox maintained in the interior of the premises of said Borer, injured the said Borer." The chauffeur testified that, while he was in charge of the "platform" at the assured's plant, Borer asked for the immediate delivery of the merchandise referred to. As was the custom when a "regular deliveryman" was not available, the witness delivered the articles to Borer's store, using one of the assured's trucks for the purpose. He thus described his own actions and the attending circumstances: "Rolled a can of milk to the back of the store where he [Borer] had his icebox; lifted the can of milk up; I put it into the icebox; brought the ice in, chopped it up around. Before I chopped it up, I had the ice pick in my back pocket. * * * As I lifted the ice up, and Mr. Borer passed me, for some reason or other, I don't know, whether it was intentional, he was going to slap me; but I saw the shadow of his arm, and I moved forward. As I did, the momentum moved down the pick and stabbed his wrist."
The initial inquiry is whether the accident thus occurring arose "in connection with the maintenance, use or operation" of assured's motor truck; and it must be resolved in the negative.
The contracting parties plainly contemplated an accident immediately identified with the ownership, maintenance, use or operation of the vehicle; and the mishap which befell Borer does not fall into that category. The natural or ordinary sense of such words is not inclusive of the service of which the injury was the direct emanation; and, in the ascertainment of the common intention, the normal significance of words, both singly and in collocation, is adhered to, unless a special meaning is shown by the circumstances. Williston on Contracts (Rev. ed.), §§ 618, 650.
These words are plain and unambiguous, and delimit with understandable certainty the liability imposed upon the insurer. They relate to the vehicle itself, and exclude acts that are only remotely connected with its ownership, maintenance, use or operation. A construction that would include within the coverage of a clause so phrased the thing being *Page 320 
done when this accident happened would impart to it an artificial meaning at variance with the apparent intention of the parties. While the intention of the parties to an integrated contract is the objective of judicial exposition, it is not the real intent but that expressed or apparent in the writing that controls. Subject to qualifications not here pertinent, the standard of interpretation of an integrated agreement is "the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing, other than oral statements by the parties of what they intended it to mean." Corn Exchange National Bank and Trust Co.
v. Taubel, 113 N.J.L. 605.
It is not suggested that these words have, by usage and custom, a peculiar meaning more extensive in scope than their natural import; and there is nothing, either in the context or circumstances, to signify their use in a special sense. And the application of the standard of interpretation adverted to does not result in uncertainty or ambiguity justifying the invocation of any of the established rules in aid of that primary standard.
That these words were used in defendant's policy in their common, ordinary and popular sense is manifested by the subsequent alternative provision imposing liability if the accident is caused by reason of the "loading or unloading" of merchandise from a vehicle of the commercial type. A clear distinction is thus made between the use, ownership, maintenance or operation of the vehicle and the loading or unloading thereof; and if it be conceded that the absence of such distinguishing language from plaintiff's policy creates uncertainty or ambiguity as to the scope of that insurer's undertaking, the doubt is, on well settled principles, to be resolved against the insurer. In that situation, we are enjoined to apply the canon of construction that, where words or other manifestations of intention bear more than one reasonable meaning, they will be read most strongly contra proferentem, unless their use by him is prescribed by law. Where the language *Page 321 
employed is reasonably susceptible of two constructions, that more favorable to the assured will be adopted. Fleming v.Connecticut General Insurance Co., 116 N.J.L. 6. This doctrine has special application to exceptions out of the general indemnity clause — exclusions from the effect or operation of that provision otherwise embraced therein.
It is to be observed that the coverage of plaintiff's policy is not limited to the "location" of the assured's business plant. It extends also to accidents occurring "elsewhere if caused by employes" of the assured "engaged usually in said business operations at said locations but who in the discharge of their duties may be required occasionally to be at other locations or if resulting from an accident occurring at said locations."
We have no occasion to determine whether an accident occurring in the course of the "loading or unloading" of a vehicle within the policy coverage arises in connection with its "maintenance, use or operation," within the intendment of plaintiff's policy. Here the unloading of the merchandise had been completed when the accident occurred. The assured's servant was then engaged in the servicing of the delivered milk upon Borer's premises, an act entirely disconnected from the unloading of the article from the vehicle.
It results that the assured's liability for the negligence of its servant was within the coverage of the policy issued by plaintiff.
The judgment is accordingly affirmed, with costs.