STATE ex Rel. BUTTE BREWING CO., et al., Relators,
*v.* DISTRICT COURT et al., Respondents.

(No. 8,062.)

(Submitted January 16, 1940.  Decided March 11, 1940.)

[100 Pac. (2d) 932.]

*Mr. J. T. Finlen, Jr.,* for Relator Butte Brewing Company, and *Mr. R. F. Gaines,* for Relator Standard Accident Insurance Company, submitted a brief; *Mr. Gaines* argued the cause orally.

*Messrs. Meyer & Meyer,* for Respondents, submitted a brief;
*Mr. William Meyer* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an application for a writ of supervisory control. The facts involved are these:

Richard T. McCulloh brought an action in the district court of Silver Bow county against the Butte Brewing Company for personal injuries. The brewing company requested the Standard Accident Insurance Company, hereinafter referred to as the insurance company, and the Occidental Indemnity Company, hereinafter referred to as the indemnity company, to defend the action which they were obligated to do if their respective policies, hereinafter referred to, covered the case; both declining to do so, an action was instituted in the district court of the above-named county by the brewing company against both the insurance and the indemnity company under the Uniform Declaratory Judgments Act (secs. 9835.1 to 9835.16, Rev. Codes), to have determined whether the defendants therein, or either of them, were liable to defend the McCulloh action. The district court overruled a demurrer to the complaint interposed by the insurance company and sustained a demurrer to the complaint interposed by the indemnity company. This proceeding is to determine the correctness of the lower court's ruling.

It appears that McCulloh was injured in the following manner: On May 3, 1938, the brewing company was engaged in delivering a barrel of beer to a place known as "Clifford's" at 11 East Broadway in the city of Butte. The beer was about to be delivered into the basement through certain hinged doors in the sidewalk. On the day in question the beer had been taken from the brewing company's truck and placed upon the sidewalk. As plaintiff was walking along the sidewalk one of the servants of the brewing company, without warning to McCulloh, lifted the doors from underneath the sidewalk preparatory to lowering the beer into the cellar through the door. The door

was lifted just as McCulloh stepped on it, and as a result he was injured.

The brewing company held two policies of insurance—one issued by the insurance company and the other by the indemnity company. The insurance company's contract was dated January 10, 1938, and the indemnity company's January 19. In general, the insurance company's contract obligated it to pay, amongst other coverages not here material, any damages imposed upon it by law because of bodily injury "sustained by any person or persons, caused by accident, and arising out of the ownership, maintenance or use of the automobile" specifically described in the policy. The policy provided that the automobile was to be used for commercial purposes and contained this provision: "(b) The term 'commercial' is defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in Item 11 of the declarations." The policy also specifically provided that "Use of the automobile for the purposes stated includes the loading and unloading thereof." The truck in question was covered by the policy.

The policy of the indemnity company obligated it to pay to the brewing company all sums for which it should become liable as damages imposed by law for bodily injuries, including loss of services or expense resulting therefrom, accidentally suffered by any person or persons not excluded in the policy, while within or upon the premises described as 214–304 North Wyoming Street, Butte, or "while elsewhere if caused by the conduct of the business operations of the Assured" described in the policy as Breweries—including bottling. It expressly provided "that the company shall not be liable in respect of bodily injuries or death * * * . 5. Caused by * * * any motor or other vehicle owned or used by the Assured or by any person while engaged in the maintenance or use of same, including the loading or unloading thereof elsewhere than within or upon the premises owned by or under the control of the Assured, including the sidewalks or ways immediately adjacent thereto."

The precise question before us is whether the complaint by the brewing company against the insurance company and the indemnity company states facts sufficient to constitute a cause of action against each of the companies.

We shall first consider the sufficiency of the complaint as against the insurance company. In addition to the facts above recited, the complaint alleges that after the automobile had reached the point on East Broadway where the barrel of beer was to be delivered, it came to a full stop, and in connection with the operation of unloading and delivering, the barrel of beer together with a rope intended to be used to facilitate lowering the barrel from the sidewalk through the iron door into the basement were removed from the truck and placed upon the sidewalk; that "thereupon one of the plaintiff's employees removed from said automobile another package of merchandise and carried it across the street for delivery to another customer;" that the other employee of plaintiff immediately thereafter preparatory to lowering the beer into the basement, entered the customer's place of business at 11 East Broadway, proceeded to the basement and unfastened a lock under the iron door and raised a part or portion of one of the doors above the level of the sidewalk as McCulloh was about to step on it, thereby causing the injuries to him.

The insurance company contends that under the facts alleged, which must be accepted as true for the purpose of the demurrer, the use of the automobile had ceased, the unloading had been accomplished and the delivery of the beer to the customer had commenced, and since the delivery, undertaken after the beer had been removed from the truck, was a part of the business of the brewing company and entailed no further use of the truck, the contract of the indemnity company, and not of the insurance company, protects the brewing company.

There are cases involving similar facts though differing in some respects which by analogy support this view. Among such cases may be cited the following: *Stammer* v. *Kitzmiller,* 226 Wis. 348, 276 N. W. 629, *Franklin Co-op. Creamery Assn.* v. *Employers' Liability Assur. Corp.,* 200 Minn. 230, 273 N. W. 809, *Zurich General Acc. etc. Co.* v. *American Mutual etc. Co.,*

118 N. J. L. 317, 192 Atl. 387, *Caron* v. *American etc. Co.*, 277 Mass. 156, 178 N. E. 286, and *John Alt Furniture Co.* v. *Maryland Cas. Co.*, (8 Cir.) 88 Fed. (2d) 36.

As before stated, all of the foregoing cases differ in some respects from the facts in the case before us. Another line of cases as nearly like this in facts as those above cited, sustains the opposite view. Before making reference to them we point out that the insurance company policy covers some liability when the automobile is not in actual use. Thus it specifically covers liability for injuries sustained in loading and unloading though obviously the truck is not in actual use in that process.

The case of *Maryland Casualty Co.* v. *Tighe*, (D. C.) 29 Fed. Supp. 69, involved a policy of insurance covering damages " 'arising out of the ownership, maintenance or use of the automobile,' 'including the loading and unloading thereof.' " It contained an identical clause relative to commercial use which was defined exactly as it is in the policy here involved. The business therein involved was that of fruit and vegetable peddler. The insured parked his truck alongside the curb near the Picadilly Inn. An assistant on the truck carried vegetables from the truck to the Inn. On his return to the truck for further produce he ran into a person and injured her. The court in condemning a contention similar to that of the insurance company here, said: "Such a construction of the policy as that contended for is entirely too narrow. Insured was using his truck in making delivery of produce to a customer. When the accident happened, the process of unloading was in operation. It was a continuing process, including delivery, and could not be complete until all of the produce was delivered to the Inn. The accident happened while the unloading was being consummated."

In *Wheeler* v. *London etc. Co.*, 292 Pa. 156, 140 Atl. 855, 856, the insured had transported two large steel girders to a certain garage building by means of a truck and trailer both of which were covered by an insurance policy. The girders were to be unloaded and delivered inside the garage then in process of construction. The wheels of the truck sank so deep into the earth that the vehicles were unable to get within the building and it

became necessary to unload the girders. This was done in such a way that one end extended inside the garage and the other projected upon the sidewalk. The driver telephoned to the employer for help and the superintendent was sent with a service car and appliances to complete delivery of the girders. By this means the smaller girder was placed wholly within the building by using the insured truck and its motor power. The larger girder had to be jacked up and planks and rollers put under it. While this work was being done a boy was injured. At the time of the injury the insured truck was across the street and not being used. The policy provided for indemnity for injuries sustained while loading or unloading, and that the commercial cars "will be used for transportation of materials and/or merchandise incidental to the business" of the insured. The court held that the truck was being used in the operation for the reason that after the planks and rollers had been placed under the girder, the truck furnished the motor power to slide or roll the beam into the garage. The court reasoned that the truck was an indispensable agency in the work then being carried on.

The case of *Panhandle Steel Products Co.* v. *Fidelity etc. Co.*, (Tex. Civ. App.) 23 S. W. (2d) 799, 801, involved a policy such as that of the insurance company here, except that it did not have a clause fixing liability for injuries resulting from loading or unloading. It held, however, that there was liability where the injury resulted from unloading steel beams from a truck. The court said: "The delivery to the purchaser of the material purchased was the main purpose of the haul, and the loading and unloading were as necessary to accomplish that purpose as was the driving of the truck from plaintiff's place of business to the point of delivery. * * * The act of unloading the automobile was not an act separate and independent of the use of the truck, but was a step incident to the use and necessary to accomplish the purpose thereof. And, since it followed in a natural and continual sequence from the use, it would seem to follow logically that the act of unloading would not preclude a holding that the use of the truck was the proximate cause of the injury, if, indeed, such a holding be necessary

to support a recovery by the plaintiff against the defendant. However, independently of that suggested conclusion, there can be no doubt that, since the act of unloading was one of the natural and necessary steps to the undertaking to deliver the beam, and followed in natural sequence the use of the truck to that end, which use was specifically contemplated and covered by the policy, we believe that the conclusion is unavoidable that the use of the truck was the primary and efficient cause of the injury, even though it should not be held to be the proximate cause, within the meaning of that term as employed in actions based on negligence of a defendant.'' (See, also, *Merchants Co.* v. *Hartford etc. Co.*, (Miss.) 188 So. 571, and *Owens* v. *Ocean etc. Co.*, 194 Ark. 817, 109 S. W. (2d) 928.)

We hold that under the facts here presented the unloading of the truck was a continuous operation from the time the truck came to a stop and the transportation ceased until the barrel of beer was delivered to the customer. The unloading of the truck cannot be said to have been accomplished when the barrel of beer was placed upon the sidewalk. As well might it be argued that the loading of the truck consisted merely of the act of lifting commodities from the ground to the body of the truck. The loading of the truck would contemplate much more than that. It would embrace the entire process of moving the commodities from their accustomed place of storage or the place from which they were being delivered until they had been placed on the truck. So, too, the unloading thereof embraced the continuous act of placing the commodities where they were intended to be actually delivered by use of the truck. This being so, the insurance company policy has application. The court properly overruled the demurrer of the insurance company.

Does the complaint state facts sufficient to constitute a cause of action against the indemnity company? Its policy, as above pointed out, covered liability for injuries off the premises if caused by business operations, but excluded injuries caused by any motor vehicle owned or used by the assured, including the loading or unloading thereof. Having held that the injuries to McCulloh arose during the unloading process, the conclusion follows that under the express language of the policy of the in-

demnity company, it was exempt from liability. The court properly sustained the demurrer of the indemnity company.

The writ applied for is denied and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ARNOLD and ERICKSON concur.