## ST. PAUL MERCURY INDEMNITY COMPANY v. STANDARD ACCIDENT INSURANCE COMPANY.[1]

November 19, 1943.

No. 33,473.

*Sexton, Mordaunt, Kennedy & Carroll,* for appellant.
*Gillette & Meagher,* for respondent.

PETERSON, JUSTICE.

Both plaintiff and defendant are insurance companies. Each through the same insurance agency issued a liability policy to the Northwestern Terminal Company of Minneapolis. An accidental injury occurred to one Brooks, who brought an action against the insured to recover for personal injuries. Plaintiff undertook the defense and subsequently settled the action. It took an assignment of the insured's rights against defendant. As assignee and subrogee of the insured, plaintiff, claiming that the policy issued by defendant covered the accidental injury to Brooks, sues to recover from defendant the amount expended in defense and settlement of the Brooks action.

On September 29, 1939, the insured was engaged in St. Paul in moving office furniture and equipment from a government building

[1]Reported in 11 N. W. (2d) 794.

to the so-called old telephone building. The moving job included taking the property from the offices where it was used in the government building and delivering it to the offices in the telephone building where it was to be used. In doing this work the insured used three crews of men, several automobile trucks, dollies, hand trucks, and a ramp. The work was divided into as many parts as there were crews. The first crew was employed at the government building to take the property from the offices and to place it on the tail-gates of the trucks which were backed against the curb on the street. The second crew consisted of a driver and helper on each truck, who took the property from the tail-gate, arranged the load on the truck, drove the truck to the telephone building, where the truck was backed against the curb, and there placed the property on the tail-gate. The third crew was employed at the telephone building. Its work consisted of taking the property from the tail-gates of the trucks, placing it on the sidewalk, and then moving it into the several offices in the building where it was to be ultimately delivered.

The telephone building was several stories high. The elevators therein were used to get the property to the upper floors. The first floor of the building, where the elevators were loaded, was from four to seven steps above the level of the sidewalk. In order to reach the first floor, a plank ramp was laid over the stairs. The property moved was placed on dollies and hand trucks on the sidewalk, which were pushed up the ramp by the men and taken to the elevators for transportation to the upper floors. The dollies and hand trucks were part of the insured's general equipment but they were not part of any truck or its equipment.

The ramp was the property of the Murphy Transfer Company, which was engaged at the time in a general moving job into the building apparently much more extensive than the insured's. The insured procured the use of the ramp from Murphy. The ramp extended from the first floor out of the building upon the sidewalk to a point five or six feet from the truck. There was no physical connection between the ramp and the truck. On the day in ques-

tion, Brooks, who was employed in the building, in leaving at the end of the day, used the ramp, as he had done previously when Murphy only used it, to descend from the first floor to the street. A plank tilted, causing him to fall, as a result of which he sustained physical injuries. At the time of Brooks' injury there was no activity on the ramp by any of the insured's employes. None of its equipment was in motion. There is some conflict in the testimony as to whether or not there was any furniture and equipment on the sidewalk. There was at the time no motor truck at the curb. A truck which had just been unloaded was in the act of pulling away.

The policy which plaintiff issued to the insured was known as a "comprehensive liability policy" in which the coverage was classified as "all operations incidental to assured's business." By its terms it covered bodily injuries "by reason of" "assured's business or work" and "the ownership, maintenance or use of the premises and equipment of the Assured by the Assured in the conduct of Assured's business or work." There was an exclusion of bodily injuries "caused while off the premises [of the assured] by any * * * automobile" or "motor driven vehicle * * * owned or used by the Assured or caused by the loading or unloading thereof."

The policy issued by defendant covered any loss arising out of the ownership, maintenance, or use of the automobiles, including the loading and unloading thereof.

The question for decision is whether "unloading" an automobile as used in defendant's policy comprehends not only removing goods therefrom at the point of their destination but, in addition, the subsequent moving of the goods to the place in the building where the insured had agreed to deliver them and the use of any instrumentalities incidental to such moving subsequent to removal of the goods from the automobile.

Judgment below, from which defendant appeals, was that defendant was liable upon the ground that its policy covered Brooks' injury.

"Unloading" a vehicle means to remove goods therefrom and does not comprehend any further handling or movement thereof. In Franklin Co-op. Cry. Assn. v. Employers' L. A. Corp. Ltd. 200 Minn. 230, 273 N. W. 809, we held that unloading a milk wagon was completed when the milk was removed therefrom; that distribution of the milk began when the driver, after the milk was unloaded, took it into a building to deliver it to the customers for whom it was intended; and that "unloading" as used in a public liability policy indemnifying the milk company for injuries resulting from the ownership, maintenance, use, and operation of its horse-drawn milk wagons, including the "unloading" thereof, covered the removal of the milk from the wagon by the driver, but not the subsequent distribution thereof by him to the company's customers in the building.

The word "unloading" has received the same construction in cases involving automobile liability insurance policies. American Cas. Co. v. Fisher, 195 Ga. 136, 23 S. E. (2d) 395; Zurich General A. & L. Ins. Co. Ltd. v. American Mut. L. Ins. Co. 118 N. J. L. 317, 192 A. 387; Handley v. Oakley, 10 Wash. (2d) 396, 116 P. (2d) 833; and Stammer v. Kitzmiller, 226 Wis. 348, 276 N. W. 629. In Stammer v. Kitzmiller, it appeared that the driver parked the insured's truck alongside the curb; that he removed a barrel of beer therefrom; that he then opened a hatchway, through which he put the barrel into the customer's basement; that he left the hatchway open while he went in to have the customer sign a receipt for the beer; and that plaintiff was injured by falling through the open hatchway. The court held that unloading of the beer was completed when the barrel was removed from the truck and that unloading did not include the subsequent use of the hatchway, even though it may have been convenient in completing delivery of the beer. Citing Franklin Co-op. Cry. Assn. v. Employers' L. A. Corp. Ltd. *supra,* the court said (226 Wis. 352, 276 N. W. 631):

"* * * When the goods have been taken off the automobile and have actually come to rest; when the automobile itself is no longer connected with the process of unloading; and when the material

which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use. The precise line at which the unloading of the automobile ends and a further phase of commerce such as the completion of delivery begins after unloading may in some cases be difficult of ascertainment, but where, as here, the merchandise had been removed from the truck and considerable time had elapsed after anything was done which could reasonably be said to be connected with the actual unloading, there is no difficulty in limiting the responsibility of the insurer who covers loading and unloading operations, and fixing the liability of an insurer who protects against loss arising from the acts caused by employees of the assured engaged in the discharge of their duties to carry on its work off the assured's premises."

As said in American O. & S. Co. v. United States Cas. Co. 19 N. J. Misc. 7, 11, 18 A. (2d) 257, 259, a distinction must be made between "unloading" and "delivery." Delivery is more inclusive than, and generally comprehends, unloading.

In numerous cases, where the question was whether an automobile was in "use" within the meaning of insurance covering ownership, maintenance, operation, and use, but which did not mention "unloading," it was held, observing the same distinction as it applies to "use" and to subsequent handling and moving, that the "use" of an automobile ceases when the goods have been removed therefrom and that subsequent handling and transportation constitute ordinary delivery to the customer in the course of the insured's business. In John Alt Furniture Co. v. Maryland Cas. Co. (8 Cir.) 88 F. (2d) 36; Kienstra v. Madison County Mut. Auto. Ins. Co. 316 Ill. App. 238, 44 N. E. (2d) 944; and Jackson Floor Covering, Inc. v. Maryland Cas. Co. 117 N. J. L. 401, 189 A. 84, it was held that use of an automobile terminated when it was parked on a public street and the goods were removed therefrom, and that "use" did not cover transportation of goods after removal of the same from the automobile to complete delivery thereof to the cus-

tomer either by manual carriage by the driver, either alone or with the aid of a helper, or by the use of some other kind of conveyance, such as a hand truck.

The case of State ex rel. Butte Brg. Co. v. District Court, 110 Mont. 250, 100 P. (2d) 932, is contra and holds that unloading includes completing delivery of goods to the customer. That case cited but did not follow our decision in Franklin Co-op. Cry. Assn. v. Employers' L. A. Corp. Ltd. *supra,* and the cases of Stammer v. Kitzmiller; Zurich General A. & L. Ins. Co. Ltd. v. American Mut. L. Ins. Co.; and John Alt Furniture Co. v. Maryland Cas. Co. *supra.* The Washington court in Handley v. Oakley, *supra,* disapproved and refused to follow State ex rel. Butte Brg. Co. v. District Court.

Numerous cases are cited by plaintiff as holding that "unloading" is not completed when goods are removed from an automobile and includes subsequent acts to complete delivery. It is not clear whether or not these cases intend to lay down the rule for which they are cited or whether they involve an application to particular facts of the rule that "unloading" is completed when goods are removed from the automobile and does not include subsequent handling and transportation. As we said in Franklin Co-op. Cry. Assn. v. Employers' L. A. Corp. Ltd. 200 Minn. 233, 273 N. W. 810: "Within limits, each case must stand on its own facts." Furthermore, the cited cases are distinguishable on their facts. In Maryland Cas. Co. v. Tighe (D. C.) 29 F. Supp. 69, it was held that "unloading" was being consummated where a driver's helper was engaged in returning to a truck parked along a curb to take goods to carry them directly from the truck into the customer's place of business without bringing them to rest at any intermediate point. That case is like that of American O. & S. Co. v. United States Cas. Co. 19 N. J. Misc. 7, 18 A. (2d) 257, *supra,* where in applying the New Jersey rule, which is the same as ours, the court held that where goods are removed directly from a parked truck to a point within the customer's building the process of removal continues from the time the goods are taken from the truck until they are brought to rest by setting them down inside the building. Such

holdings involve an application of the rule that removal of the goods from a vehicle constitutes unloading and that the process is not completed until the goods are brought to rest. Here, the goods were not moved from the truck directly into the telephone building, but were first brought to rest by depositing them on the sidewalk and then were placed on the dollies and hand trucks to haul them into the building. The case of Panhandle Steel Products Co. v. Fidelity Union Cas. Co. (Tex. Civ. App.) 23 S. W. (2d) 799, did not involve an unloading clause. It was there held that a "use" clause covered an accident caused by removing a steel girder from an automobile truck in such a manner as to injure a pedestrian. Here the accident was not caused by removing anything from the truck. In Wheeler v. London G. & A. Co. 292 Pa. 156, 140 A. 855, the coverage extended to the operation and use of the automobile for transportation of the insured's goods and the loading and unloading thereof. It was held that such coverage included the operation and use of the automobile for dragging unloaded steel to the place where it was to be delivered to the customer. The court said (292 Pa. 163, 140 A. 857):

"* * * We reach the conclusion then that whether the truck may be considered to have been unloaded or not, it was in active operation and use at the time of the injury to the boy, that the accident occurred in the course of the transportation of plaintiffs' merchandise and that the loss to which the accident gave rise was one against which defendant insurance company was bound to indemnify plaintiffs."

Here the truck was not being used, but was being driven away, when the accident occurred. In Maryland Cas. Co. v. Cassetty (6 Cir.) 119 F. (2d) 602, an "unloading" clause was held to cover accidental injury caused by the negligent manner in which coal was dumped on a street. Here the accident was not caused by any negligence in connection with removing the goods from the truck.

The cases cited show that a practice prevails among insurance underwriters and those procuring insurance to divide insurance coverage according to risks involved. General and comprehensive liability policies are issued to cover all risks incident to operation of a business, except those involved in the ownership, maintenance, operation, and use of automobiles. Because the ownership, maintenance, operation, and use of automobiles involve special and peculiar risks as an incident thereof, to which the general business of the insured is not subject, such risks are excluded from the general coverage and are covered as a special class by automobile liability policies. In a sense, automobile risks are incidental to the operation of a business, but for purposes of insurance coverage they are dealt with as a separate class. The policies covering such risks relate to the hazards involving the automobile itself. The line is drawn between risks incident to the general business and those incident to the automobile while being used to accomplish limited operations involved in such business. Delivery involves operations not included in the use of an automobile to transport goods. It involves both general business and automobile risks. Risks incident to "unloading" an automobile pertain to the vehicle, not to the general business of the insured. As the New Jersey court said in Zurich General A. & L. Ins. Co. Ltd. v. American Mut. L. Ins. Co. 118 N. J. L. 317, 319, 192 A. 387, 388, *supra,* holding that the word "unloading" includes only removal of goods from an automobile and not subsequent operations involving delivery thereof to the customer, the language of an automobile indemnity policy "relate[s] to the vehicle itself, and exclude[s] acts that are only remotely connected with its ownership, maintenance, use or operation. A construction that would include within the coverage of a clause so• phrased the thing being done when this accident happened would impart to it an artificial meaning at variance with the apparent intention of the parties." Delivery subsequent to unloading is part of the insured's business and falls under the coverage of public liability indemnity. Such a division of coverage is apparent in this case.

We adhere to the rule of Franklin Co-op. Cry. Assn. v. Employers' L. A. Corp. Ltd. 200 Minn. 230, 273 N. W. 809, and that of other courts which apply the same rule to motor vehicles. Our conclusion is that the goods were unloaded in the instant case when they were removed from the truck and placed upon the sidewalk and that unloading did not include the subsequent handling and transportation of the same from the sidewalk into the building. Therefore the accident was covered by plaintiff's and not by defendant's insurance policy. Defendant is entitled to judgment.

Reversed and judgment ordered for defendant.

Mr. Justice Loring, absent because of accidental injuries, took no part in the consideration or decision of this case.