Kerns, J.
At the outset, it is clear that the provisions of the insurance policy issued to Gulf by Travelers could neither enlarge nor restrict the coverage of the policy issued by Buckeye to McCracken. We are only concerned, therefore, with the contract between Buckeye and McCracken, and in construing the latter contract it is fundamental, of course, that the intent of the parties thereto, when ascertained, will be controlling. In other words, did Buckeye and McCracken intend to protect Gulf when their contract was executed?
Provisions of insurance policies similar to those now under consideration have been the subject of considerable litigation. 160 A. L. R., 1259. In the majority of the reported cases, however, the party charged with negligence was either the named *512 insured or someone clearly using the automobile or truck with the permission of the named insured. Bobier v. National Casualty Co., 143 Ohio St., 215, 54 N. E. (2d), 798; Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah, 500, 161 P. (2d), 423, 160 A. L. R., 1251; Raff el v. Travelers Indemnity Co., 141 Conn., 389, 106 A. (2d), 716; State, ex rel. Butte Brewing Co., v. District Court, 110 Mont., 250, 100 P. (2d), 932; Stammer v. Kitzmiller, 226 Wis., 348, 276 N. W., 629; Thompson Heating Corp. v. Hardware Indemnity Ins. Co., 74 Ohio App., 350, 58 N. E. (2d), 809; Commercial Standard Ins. Co. v. New Amsterdam Casualty Co. (Ala. 1961), 131 So. (2d), 182; Allstate Ins. Co. v. Valdez (Mich. 1961), 190 F. Supp., 893.
In those cases, the ordinary and permissive use of the automobiles or trucks, as the case may be, was established and continuous, and, the “loading and unloading” clause being a reasonable extension of the use, the sole question for determination was whether loading had begun or unloading had ended. In resolving the question, some jurisdictions turned to the so-called “coming to rest” doctrine, as illustrated by such cases as St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co., 216 Minn., 103, 11 N. W. (2d), 794, and Stammer v. Kitzmiller, supra, but most jurisdictions are now committed to the broader construction of such policies, which is known as the “complete operation” doctrine, as exemplified by the case of Pacific Automobile Ins. Co. v. Commercial Casualty Co., supra. This court adopted the latter view in the case of Bobier v. National Casualty Co., supra, where paragraph four of the syllabus states:
“ ‘Loading,’ as used in such insurance policy, begins at the time the insured or his agent or servants connected with the truck, receive the article and, as part of a continuing operation, place it upon the truck; and ‘unloading’ ceases when the article is taken from the truck by such employees and, as part of a continuing operation, is delivered to the customer or to the place designated for delivery.”
Although Travelers places considerable reliance upon the Bobier case, it appears doubtful that a literal application of the above-quoted language to the facts now before us would give any justification for such reliance. Here, there was no move *513 ment by anyone of anything, liquid or solid, which had any relationship to the purposeful presence of the truck. Obviously, the tank truck was not on the premises of Gulf to secure any equipment from Gulf. It was there for the purpose of obtaining diesel fuel.
But aside from this observation, the Bobier case is of questionable value in the disposition of the problem which now confronts us. In that case, the damage was caused by employees connected with the truck; they were in the continuous use of the truck on the business of the named insured; loading and unloading'were natural consequences of that use; their actions inured to the benefit of the named insured; and their negligence was clearly imputable to the named insured. They were, therefore, “insured” within the scope of the definition of that term as used in the policy, and the coverage afforded in that case was within the common understanding and conception of the scope of liability insurance.
But where, as here, the injury is caused by a third party who is not connected with the truck, who has no legal relationship to the named insured, and who under normal circumstances would not be using the truck of the named insured, it must first appear, before the liability provisions of the policy become applicable, that such third party was in the actual use of the truck at the time of the injury, with the express or implied permission of the named insured.
Reverting to the language in the contract, to say that “use includes loading and unloading” is not tantamount to saying that the contemplated use is exclusively confined to loading and unloading. The former contemplates more than the latter. In our judgment, loading and unloading are but component parts of “use,” and the former is of no consequence unless or until the party charged with negligence is shown to have been using the truck so as to qualify as an “insured” within the definition of that term as used in the policy. And, although “using” and “actual use” do not have the limited meaning of “operating” or “actual operation” (Brown v. Kennedy, 141 Ohio St., 457), neither can such words be extended beyond what may reasonably be implied from the circumstances of the case or the relationship of the parties. Where third parties are involved, it *514 cannot be validly claimed that mutual acquiescence constitutes permissive use until some particular use of the truck appears which may be the subject of acquiescence. Since it is fair to assume that McCracken paid premiums to Buckeye for his own protection, it reasonably follows that a strong symptom of use would appear when the third party performed some act relating to the truck which was for the benefit of McCracken.
Here, the facts are that the equipment used by Gulf’s employee was exclusively owned by Gulf, and the acts performed by Gulf’s employee related exclusively to his own employment. The insured truck was still under the exclusive control of Mc-Cracken’s employee. We do not find, therefore, that Gulf’s employee was using McCracken’s truck for any purpose at the time of the accident. Suppose, for example, that ten trucks were waiting in line for a load of diesel fuel when a Gulf employee injured someone in the area in like manner as in this ease. Would the negligence creating liability be traceable to the insurers of the trucks?
The most persuasive authority cited by Travelers is the case of Wagman v. American Fidelity & Casualty Co., Inc., 304 N. Y., 490, 109 N. E. (2d), 592. That case was judicially noticed in the cases of Spurlock v. Boyce-Harvey Machinery, Inc. (La. App.), 90 So. (2d), 417, and Lowry v. R. H. Macy & Co., Inc., 119 N. Y. Supp. (2d), 5, which also have facts that parallel the facts of the instant case. In none of those cases was the party charged with negligence an employee of the named insured.
In the Wagman case, a truck was parked at the curb in front of a Bond store. Two Bond employees rolled garments out of the store on movable racks to the curb line where the driver of the truck reached down and lifted the garments into the truck.
The named insured’s employees did not leave the truck and none of Bond’s employees entered the truck or brought the garments farther than the curb line. Wagman, who was employed by Bond, was engaged in counting and checking the clothes (something, incidentally, which he could have done when the truck was miles away), but he did not participate in the actual pushing or carrying of the garments. On his way back *515 to the store, he humped into a pedestrian causing her to fall to the sidewalk and sustain injuries.
In extending the coverage of the truck policy to Wagman, the court recognized, at page 495, that “the only problem is whether plaintiff may be regarded as having been ‘using’ the vehicle within the meaning of the policy.” Then, after stating that “the answer to that is clear,” the court cited the case of Zurich Gen. Accident & Liability Ins. Co. v. Eagle Ind. Co., 279 App. Div., 574, 107 N. Y. Supp. (2d), 552, and the case of Conrad v. Duffin, 158 Pa. Sup., 305, 44 A. (2d), 770. We agree that the only problem in that case was whether Wagman was using the truck when he was counting clothes for Bond, but we fail to comprehend the manner in which the two cited cases dispose of that problem. In each of the cited cases, the party charged with negligence was actually using the truck involved with the permission of the named insured before the accident occurred which gave rise to the cause of action. In neither case, • therefore, was the court confronted with the problem of whether the party involved was “using” the vehicle within the meaning of the policy.
In reality, the construction given to the policy in the Wagman case was new, but we cannot, in the absence of any showing that the Bond employee was using the truck, reconcile the conclusion therein with what we conceive to be the intention of the parties to such a contract.
To accord to this policy the construction which Travelers claims was intended leads to the conclusion that McCracken paid premiums to Buckeye so that Buckeye would insure and protect Gulf against the claims of McCracken. It seems doubtful that the parties to the contract so intended. In our opinion, Gulf’s employee was not using McCracken’s truck for any purpose. He was not, therefore, an “insured” under the policy issued by Buckeye.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Zimmerman, acting C. J., Doyle, Taft and Bell, JJ., concur.
Matthias and Herbert, JJ., dissent.
*516 Zimmerman, J., sitting in the place and stead of Weygandt, C. J.
Doyle, J., of the Ninth Appellate District, sitting by designation in the place and stead of Zimmerman, J.
Kerns, J., of the Second Appellate District, sitting by designation in the place and stead of O’Neill, J.