JOHNSON, DRAKE & PIPER, INC., Modern Erecting Co., Harlan Stowe and Wesley P. Janshen, Plaintiffs,

and

Continental Casualty Company and Aetna Casualty & Surety Company, Additional Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

No. 4–63–Civ–325.

United States District Court
D. Minnesota,
Fourth Division.

Sept. 23, 1966.

William P. Westphal, Minneapolis, Minn., for plaintiffs Johnson-Drake & Piper, Inc., and Continental Casualty Co.

Wright W. Brooks, Minneapolis, Minn., for Modern Erecting Co. and Aetna Casualty & Surety Co.

Leonard E. Lindquist, Minneapolis, Minn., for Harlan Stowe.

John D. Rice, Minneapolis, Minn., for Wesley Janshen.

Francis W. Van Eps, Minneapolis, Minn., for defendant Liberty Mutual Ins. Co.

## MEMORANDUM

DEVITT, Chief Judge.

This action, under the Declaratory Judgments Act, for interpretation of an insurance policy, comes to the Court by way of a stipulated statement of facts accompanied by briefs. Diversity jurisdiction is established.

In a prior Minnesota state court action plaintiffs were adjudged liable to one Edward Thill for injuries resulting from an industrial accident on June 23, 1960. The Minnesota Supreme Court affirmed, Thill v. Modern Erecting Co., 272 Minn. 217, 136 N.W.2d 677 (1965). The original plaintiffs, along with the additional plaintiffs, Continental Casualty Co. (Continental), the comprehensive general automobile liability insurer of Johnson, Drake & Piper, Inc. (Johnson-Drake), and Aetna Casualty and Surety Co. (Aetna), the general comprehensive liability insurer of Modern Erecting Co. (Modern), now claim the Liberty Mutual Insurance Co. (Liberty), through the automobile liability policy it issued to the J. L. Shiely Co. (Shiely), is the party ultimately responsible to pay the damages, plus interest and taxable costs, awarded to Edward Thill in the state court verdict.

The injury to Edward Thill in June, 1960, occurred at the site of a Western Airlines building then under construction by the Minneapolis-St. Paul Metropolitan Airport Commission at Wold-Chamberlain Airport. Johnson-Drake was the general contractor in charge of the whole project. Johnson-Drake, by agreement with Jesco, Inc., the subcontractor for concrete work, employed Modern to supply the crane to transport concrete from the Shiely ready-mix trucks to the building roof being poured on the morning of the accident. At the time the concrete pouring operation was in progress, Thill, the employee of yet another subcontractor handling the excavation and earth-moving work, was back-filling an excavation near the crane. After two Shiely trucks were emptied and a third partially emptied through use of the crane and bucket, the accident occurred. The crane, while moving a loaded bucket of concrete to the building roof, tipped over striking and injuring Thill.

Most of the evidence and findings in the state court as to the causes of the accident are not pertinent to the issues here. It suffices to note that the state court found negligence on the part of Modern and its employees, Harlan Stowe, the crane operator, and Wesley Janshen, the crane oiler, and on the part of John-

son-Drake, the general supervisor on the job. In addition the Minnesota Supreme Court concluded that the jury was justified in finding a breach of statutory duty of bailor for hire on the part of Modern. No negligence was found on the part of Shiely or the driver of the ready-mix truck. These findings as to negligence and proximate cause are not in dispute in the present action.

Judgment was ordered in Thill's favor against Johnson-Drake and Modern for $642,400 accompanied by an order of indemnity in Modern's favor against Harlan Stowe and Wesley Janshen. Thill later consented to a reduction of the verdict to $375,000 upon the court's order that without such consent motions for a new trial would be granted. Following appeals to the Minnesota Supreme Court, Continental, as the insurer of Johnson-Drake, and Aetna, as the insurer of Modern, each paid $213,390.44, or one-half the total verdict plus interest and taxable costs, in full satisfaction of the verdict recovered by Thill.

The parties have stipulated that the plaintiffs, Johnson-Drake, Modern, Harlan Stowe and Wesley P. Janshen, gave timely notice to Liberty of their claims to coverage under Liberty's policy with Shiely and tendered to defendant the defense on their behalf of Thill's state court action. Defendant Liberty denied these tenders.

Plaintiffs, and the additional plaintiffs by way of subrogation to the rights of their insureds, now claim coverage as additional insureds under Liberty's liability policy with Shiely. The specific provisions of the Liberty policy giving rise to this claim read as follows:

DEFINITION OF INSURED With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes * * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *.

* * * * * *

Use of the automobile for the purposes stated includes the loading and unloading thereof.

In addition to the claimed coverage under the Liberty policy, plaintiffs rely on provisions excluding or limiting coverage in the Continental and Aetna policies. Condition 14 of the Continental policy with Johnson-Drake and condition 17 of the Aetna policy with Modern read identically, as follows:

OTHER INSURANCE If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, *the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.* (Emphasis added.)

All plaintiffs thus claim coverage, either directly or by way of subrogation, under the omnibus insureds and the loading-unloading clauses of the Liberty policy. Also, Continental and Aetna claim their insurance provides only excess or secondary coverage in light of the other insurance clauses in their policies. Aetna further asserts that since their policy with Modern does not cover employees such as Stowe and Janshen and since Modern is entitled to indemnity from these employees, Aetna, as subrogee of Modern, is entitled to recover from Liberty because Stowe and Janshen are covered by Liberty's policy with Shiely. This latter assertion is only relevant in the event that the various insurers are obligated in some manner on a pro rata basis, or if in some manner Stowe and Janshen qualify as additional insureds under Liberty's policy while Modern, in its own right, does not.

Liberty contends in defense against these claims (1) the tipping of the crane and the resultant injuries to Thill did not "arise out of" the "use" of the Shiely truck—or, more specifically, did not arise out of the unloading of the truck—within the meaning of the Liberty policy, and (2) no causal relation exists between any use of the truck and an accident caused by an instrumentality under the operation and control of separate and independent parties. Liberty further argues (1) the inapplicability of the "loading and unloading" clause of a truck insurance policy to an organization guilty of a breach of statutory duty with regard to the erection, inspection and operation of a crane, and (2) the remoteness in time and place, presumably from the Shiely truck and/or the "use" thereof, of the negligence causing the accident precludes recovery under the Liberty policy.

The question of whether or not plaintiffs were additional insureds under Liberty's policy with Shiely turns, as the parties apparently agree, on whether or not plaintiffs were "users" of the ready-mix truck under the loading and unloading clause. No further definition of the intended scope of this "use" is given in the policy itself. Unfortunately, a multitude of judicial decisions in this area present little in the way of consistency in determining the scope of "loading and unloading" as those terms are used in automobile liability insurance policies.

Those cases finding a very broad scope of coverage based on loading and unloading clauses most generally adopt the so-called "complete operation" rule. Under this view the unloading process includes not only the actual removal of goods from a vehicle, but also all steps in the delivery of the goods to their intended place, including the use of any necessary conduit, albeit controlled and operated independent of the vehicle. See, e. g., St. Paul Mercury Ins. Co. v. Huitt, 336 F.2d 37 (6th Cir. 1964) (applying Michigan law); Travelers Ins. Co. v. Employers Cas. Co., 380 S.W.2d 610 (Sup.Ct.

Tex.1964); Travelers Ins. Co. v. W. F. Saunders & Sons, Inc., 18 A.D.2d 126, 238 N.Y.S.2d 495, aff'd 13 N.Y.2d 1019, 1021, 245 N.Y.S.2d 597, 195 N.E.2d 303 (1963); Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962). These cases are almost identical on their facts to the instant case. Under the authority of these cases it is apparent that, if Minnesota expressly or impliedly follows the "complete operation" rule, the accident causing injury to Thill falls within the coverage provided by Liberty's policy to Shiely. The final resting place of the goods, and hence the completion of the unloading, would be the roof of the building, not the bucket of the crane. The factors of lack of control and/or lack of negligence by Shiely and its employees and the established negligence and control of parties independent of Shiely would not alter this conclusion.

A theory expressing a much narrower scope of coverage for loading-unloading clauses is the so-called "coming to rest" rule. This rule always was a minority view and is specifically enunciated in few, if any, recent decisions while the "complete operation" theory continues to gain wider acceptance and is still explicitly followed in numerous decisions. See, annotation, 95 A.L.R.2d 1122. Under the "coming to rest" doctrine the coverage afforded by a loading-unloading clause is held to cease when the goods have actually come to rest and every connection of the motor vehicle with the process of unloading has ceased. United States Fidelity & Guaranty Co. v. Church, 107 F.Supp. 683 (N.D.Calif. 1952), aff'd sub nom. Canadian Indemnity Co. v. United States Fidelity & Guaranty Co., 213 F.2d 658 (9th Cir. 1954); Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629 (1937).

Still other decisions emphasize the difficulty of drawing lines, as to when unloading ceases, under either theory, and the necessity of deciding each individual case on the particular facts involved and, therefore, do not clearly enunciate either

of the theories discussed above. Perhaps these two rules, still discussed in most cases of this type regardless of whether either is expressly adopted, maintain their greatest vitality as reference points indicating the extremes of time, place and activity within which the cessation of the unloading process, and hence the coverage under the loading-unloading clause of an insurance policy, occurs.

Whether adopting one of the specific theories described above, or speaking to the individual circumstances of an accident or injury, the decisions in this area almost universally refer, at least implicitly, to the need for some causal relationship between the unloading process and an accident or injury before coverage under a policy exists. While this element is discussed herein somewhat separately from the definition of loading-unloading clauses, etc., the causal relation requirement is actually only another means of, or a part of, any interpretation of the scope of coverage since it means some connection must exist between the accident or injury and some "use," more specifically in this instance unloading, of the insured vehicle. See generally, annotation 95 A.L.R.2d 1122. Thus, while a causal relation rule or test may appear simpler and more precise than the wide confusion and divergence generated by the choice between the variations of the "coming to rest" and "complete operation" rules, the decisions employing or emphasizing this factor have generally merely found another term to define besides "unloading." Probably the recent emphasis on the causal relation factor results from a desire to avoid the inconsistency in the case law as regards "loading-unloading" clauses. Unfortunately, the product of these attempts has been an equally wide divergence among the authorities as to what constitutes a causal relation or a sufficient causal relation, i. e., those jurisdictions wishing to establish broad coverage under "loading-unloading" clauses require little in the way of causal relation and those jurisdictions wishing to establish broad

coverage under "loading-unloading" clauses require little in the way of causal relation and those jurisdictions favoring a narrow scope of coverage seek more definite causal relation.

On the one hand, these latter jurisdictions find coverage only if the unloading is the efficient and predominating cause of the accident or injury, or an active factor, or absent "some independent factor or intervening cause wholly disassociated with and remote from the use of the truck." Clark v. Travelers Indemnity Co., 313 F.2d 160 (7th Cir. 1963) (applying Illinois law); Bituminous Cas. Corp. v. Hartford Accident & Indemnity Co., 330 F.2d 96 (7th Cir. 1964) (applying Illinois law); General Accident Fire and Life Assurance Corp., Ltd. v. Brown, 35 Ill.App.2d 43, 181 N.E.2d 191 (1962); Kaufman v. Liberty Mutual Ins. Co., 264 F.2d 863 (3rd Cir. 1959) (applying Pennsylvania law); Ferry v. Protective Indemnity Co. of New York, 155 Pa. Super. 266, 38 A.2d 493 (1944); See also, annotation 95 A.L.R.2d 1122 at § 9, and Travelers Ins. Co. v. Buckeye Union Cas. Co., 172 Ohio 507, 178 N.E.2d 792, 95 A.L.R.2d 1114 (1961).

On the other hand, while most cases favoring a broad scope of coverage under "loading-unloading" clause still speak primarily in terms of the "complete operation" doctrine, those cases which refer directly to causal relation give quite a different meaning to that term. Causal relation as required in those cases resembles the most minimal "but for" relationship. If the vehicle is being "used," the requisite causal relation exists—thus the decision remains one of what constitutes "use," or more specifically unloading. The logic behind this view is that the issue of causal relation is not one of proximate cause as in tort law, or whether the vehicle "caused" the accident or injury, but one in the field of contract law, i. e., coverage under the wording of an insurance policy. E. g., St. Paul Mercury Ins. Co. v. Huitt, supra; Travelers Ins. Co. v. Employers Cas. Co., supra, and 370 S.W.2d 105 (concurring opinion).

Against this background of the divergence of the law in other states a decision in the instant case under the applicable Minnesota law may be clearer, since Minnesota is not as clearly or firmly committed to any definite viewpoint in this area as some other jurisdictions. Further, some change has taken place in Minnesota law in recent years, if not in viewpoint at least in the clarity of the enunciation of what viewpoint prevails under Minnesota law.

One, and possibly two, early Minnesota cases caused certain authorities to place this state in the minority camp as a jurisdiction adhering to the "coming to rest" rule. The first of these cases, Franklin Co-op Creamery Ass'n v. Employers' Liability Assurance Corp., 200 Minn. 230, 273 N.W. 809 (1937), involved an injury occurring to a third party when the driver of a horse-drawn milk wagon pulled a defective elevator cable. The deliveryman had parked his wagon at the curb and entered a building with milk products for distribution. The Minnesota Supreme Court in denying coverage held that, even if "unloading" was a term with special trade meaning, at the time of the accident the process of unloading was complete and the process of retail distribution had begun and the use of the elevator had nothing to do with the use of the vehicle.

The second of these cases, St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co., 216 Minn. 103, 11 N.W.2d 794 (1943), likewise denied coverage under a "loading-unloading" clause. An accident occurred to a person leaving a building via a ramp, not owned by the insured but used by the insured's employees for unloading trucks. No truck was actually being unloaded at the time of the injury. The Minnesota Supreme Court stated that unloading includes removal of the goods from the vehicle but no further handling thereof, although the insured was to deliver the goods to the desired location within the building. The Court further stated that when the goods have been removed from the vehicle and delivery has begun by other forces independent of the vehicle and the actual method of unloading the vehicle, the vehicle is no longer in use. While the cases certainly lend some support to the interpretation given to Minnesota law, upon reading these cases the distinction of the factual situations from the instant case becomes apparent.

More recently, in State Automobile and Cas. Underwriters v. Casualty Underwriters, Inc., 266 Minn. 536, 124 N.W. 2d 185 (1963), the Minnesota Supreme Court declined to use either the "coming to rest" or "complete operation" theory reasoning that the facts of each case make the issue pretty much an individual case by case determination. Moreover, the case of Minneapolis, St. Paul & S. S. M. R. R. Co. v. St. Paul Mercury Indemnity Co., 268 Minn. 390, 129 N.W.2d 777 (1964), specifically cites the State Automobile & Cas. Underwriters case as expressly rejecting the "coming to rest" doctrine as determinative of when unloading ceases. This latter case does clearly express the view that the "coming to rest" rule is unuseable since it is based on the absurdity of whether or not the article is of the type, mostly dependent on size, which is usually put to rest, at least momentarily during the process of delivery.

In fairness to defendant it should be noted that neither are these two later cases particularly analogous factually to the instant case. Also, none of the Minnesota decisions expressly commit this jurisdiction to the "complete operations" theory, and, in fact, it remains somewhat unclear what scope Minnesota intends to give to coverage under "loading-unloading" clauses.

One of several pertinent recent decisions construing Minnesota law in this area is Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F.Supp. 197 (D.Minn. 1954). This case states that the requisite causal relationship is present when the injury would not have occurred but for the loading of a truck, rather than any necessity existing that the truck or driver be the instrumentality causing the injury. An injury caused by the use of

some device needed in the loading process is a hazard incident to the loading and, hence within the scope of the "loading-unloading" clause of an insurance policy.

Another significant Minnesota case dealing with an issue similar to the one now before the Court is Gamble-Skogmo, Inc. v. St. Paul Mercury Indemnity Co., 242 Minn. 91, 64 N.W.2d 380 (1954). In this case an injury resulted from the failure to properly instruct on the manner to assemble a machine. This hazard was held to be a general business risk unrelated to the use or unloading of a vehicle and not transformed into an automobile hazard merely because the injury occurred during unloading. This case is distinguished in the case of Minneapolis, St. Paul & S. S. M. R. R. Co. v. St. Paul Mercury Indemnity Co., supra, on the basis of the lack of a peculiar relation to the hazards of unloading—a lack not found in the other recent Minnesota decisions or the instant case. The case is also perhaps subject to the criticism of employing, in a case involving the construction of a contract, reasoning analogous to determinations of proximate cause in tort law—a pitfall more clearly avoided in the latest cases.

█ The two latest Minnesota decisions in this area deal with three factors in determining the scope of coverage under "loading-unloading" clauses: (1) causal relation; (2) control of the goods by the driver of the insured vehicle; and (3) the intent of the parties to the insurance contract. Minneapolis, St. Paul & S. S. M. R. R. Co. v. St. Paul Mercury Indemnity Co., supra; State Automobile & Cas. Underwriters v. Casualty Underwriters, Inc., supra.

█ The requisite causal relation seems minimal. These cases appear to follow the lead of Judge Nordbye in the Bituminous Cas. Corp. case, supra, in this regard and adopt the reasoning that sufficient causal relation is' established when an injury or accident would not have occurred "but for" the unloading of the vehicle.

█ The control requirement seems also to be of a minimal nature and importance, and further, is somewhat unclear in meaning. The control factor appears more than anything else to delineate the time at which unloading and, hence, coverage ceases. The relinquishing of responsibility for the goods, rather than the actual physical control thereof, may indicate the end of the unloading process under this test. In the *Casualty Underwriters* case, supra, the injury resulted from the opening of a basement sidewalk door, preparatory to unloading, by an employee of the establishment where delivery was being made. Physical control of the goods certainly had only an artificial relation to the events in that situation, and control thus appears to assume significance only when viewed as a time element, *i. e.*, as ending the period of coverage under the "loading-unloading" clause when responsibility or possession, or some other control other than physical control, shifts to another party. In the *Minneapolis, St. Paul & S. S. M. R. R. Co.* case, supra, the helper had relinquished physical control of the goods, at least momentarily, to the driver helping with loading, and the injury resulted from the helper's failure to give proper warning to the driver or from leaving the driver holding the goods in an improper manner. The case goes on to state that the helper was in any event "in control" of the goods. But the immediately following portion of the opinion clarifies the point that neither the vehicle nor the helper need cause the injury, citing the *Bituminous Cas. Corp.* case, supra, and then citing the decision in Maryland Cas. Co. v. New Jersey Manufacturers Cas. Ins. Co., 48 N.J.Super. 314, 137 A.2d 577, aff'd 28 N.J. 17, 145 A.2d 15, for the proposition that being part of the "complete operation" of loading or unloading is "the test." The control element is merely noted in these cases and is neither emphasized nor determinative of the ultimate issue.

The significance of this factor or criteria, as with the causal relation element,

revolves back to the original issue of what constitutes unloading. While the "unloading" is in progress, a "but for" causal relation exists; while a causal relation exists, an act or event is part of "unloading"; while the driver has control, an act or event is part of "unloading"; while "unloading" is in progress, the driver has control.

 If this entire analysis thus revolves back to an analysis of the intent of the parties to the contract based upon a construction of the language of the insurance contract, perhaps that is the proper determination in the first place and, in the second place, appears as the most concrete and decisive criteria under present Minnesota law. Under the authority of State Automobile & Casualty Underwriters v. Casualty Underwriters, Inc., supra, the parties most likely intended to cover, under the "loading-unloading" clause, all hazards from initial loading until the goods were unloaded including all incidental and necessary parts of the unloading process; and, thereby, including, under the reasoning and authority of the *Bituminous Cas. Corp.* case, supra, the hazard of an injury caused by the use of some device needed in the unloading process.

 Ambiguous language in an insurance contract, as in other contracts, must be construed most strongly against the party selecting the language and drawing the instrument. While this rule of construction may have its greatest merit in instances of disagreement between the actual contracting parties, it has been applied in numerous situations parallel to the instant case. See, e. g., Minneapolis, St. Paul & S. S. M. R. R. Co. v. St. Paul Mercury Indemnity Co., supra; State Automobile & Casualty Underwriters v. Casualty Underwriters, Inc., supra; see generally, annotation 95 A.L.R.2d 1122. In answer to the possible argument that the latest Minnesota cases expanding the scope of coverage under "loading-unloading" clauses were un-known to defendant when the contract was drawn, the fact remains that the failure to adopt restrictive language, in light of the numerous decisions in all jurisdictions construing these clauses, and the lack of a clear position under Minnesota law, weighs most heavily against any hindsight contention by defendant that it intended anything but the broadest scope the law allows to such unrestrictive language. C.f., Lamberti v. Anaco Equipment Corp., supra. It is my view that under Minnesota law the hazard resulting in the accident which in turn gave rise to this lawsuit was within the scope of the coverage afforded by the unrestrictive "loading-unloading" clause of Liberty's policy.

In answer to defendant's last two claims in defense, and perhaps in answer to the argument that common sense does not easily place responsibility in this case where the law has placed it, one point need be reiterated. The issue in this lawsuit is not primarily one of proximate cause or breach of statutory duty or the logical distribution of risks, but, rather, what risks the parties involved covered through the language employed in the insurance contract in the light of the significance attributed such language, and particularly in this instance the absence of restrictive language, under the law. See Woodrich Construction Co. v. Indemnity Ins. Co., 252 Minn. 86, 89 N.W.2d 412 (1958).

Under the law of Minnesota the plaintiffs were "using" the Shiely truck by reason of participation in the unloading process at the time of the accident causing injury to Edward Thill. Persons thus "using" the vehicle are entitled to coverage as omnibus insureds under the Liberty automobile liability insurance policy with Shiely.

The Court will sign appropriate Findings of Fact, Conclusions of Law and an Order for Judgment which plaintiffs' counsel are requested to submit.